Steven FLOWERS, Appellant–Petitioner,

v.

Gail FLOWERS, Appellee–Respondent.

No. 48A05–0301–CV–34.

Court of Appeals of Indiana.

Dec. 9, 2003.

---

Lynne H. Lawyer, Jane Cotton, Anderson, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Petitioner, Steven Flowers (Steven), appeals the trial court's order regarding his overpayment of an alleged child support arrearage.

We remand with instructions.

*ISSUES*

Steven raises five issues on appeal, which we combine and restate as follows:

1. Whether Ind.Code § 31–16–15 is unconstitutional, in that it deprived him of his right to due process;

2. Whether the Title IV–D Prosecutor's failure to comply with the notice and hearing requirements of I.C. § 31–16–15 violated his right to due process;

3. Whether the trial court erred in calculating the amount of child support credit Steven is due as a result of his overpayment; and

4. Whether the trial court abused its discretion in refusing to award attorney fees and lost wages to Steven.

*FACTS AND PROCEDURAL HISTORY*

On February 23, 1995, in Madison County, Indiana, the court of original jurisdiction in this case (domestic court) entered a decree of dissolution, ending Steven's marriage to Gail Flowers (Gail). Custody of the couple's two minor children was awarded to Gail. The domestic court also ordered Steven to pay $200 per week in child support through an income withholding order.

On July 8, 1997, pursuant to a child support modification hearing, the domestic court entered an order modifying the amount of support Steven was to pay. Specifically, Steven was ordered to pay $130 per week to support his youngest child and $420 per month directly to his daughter for her higher educational expenses. Subsequently, the domestic court granted Steven's motion to terminate the income withholding order of $200 per week, thereby allowing Steven to remit his $130 per week payments directly to the Madison County Clerk's Office. Also on

July 8, 1997, the domestic court granted Steven two additional weeks of summer visitation with his son, and ordered that, for any period of seven or more days that the child spends with Steven, child support for the corresponding period shall abate by one-half.

On October 13, 1999, Steven filed his Petition for Emancipation of Parties' Oldest Child and for Modification of Support and College Expenses and his Petition for Modification of Custody of Youngest Child. On June 7, 2000, Gail filed her Petition to Modify Child Support. Thereafter, on July 28, 2000, the domestic court entered its order setting child support at $165 per week, effective back to June 20, 2000. The domestic court also granted Steven's motion to emancipate his older child. Subsequently, Steven filed a Motion to Correct Error.

On December 21, 2000, the domestic court ruled on Steven's Motion to Correct Error and denied his request to modify custody of the younger child. Thereafter, Gail filed a Motion to Correct Error, which was granted on May 1, 2001. As part of its Order granting Gail's motion, the domestic court determined that Steven's child support payments were $734.88 in arrears.[1] The domestic court ordered Steven to pay the arrearage at the rate of $25 per week, for a total of $190 per week. The official certified copy of Steven's child support payments to the Madison County Clerk's Office indicates that Steven began paying $190 per week on May 15, 2001, per the May 1, 2001 Order, and continued to pay $190 per week until December 4, 2001, when he made a payment of $149.88.[2]

---

1. It would appear from Steven's child support payment history that the arrearage is a result of Steven's continuing to pay $130 per week (instead of $165 per week) during much of the pendency of his Motion to Correct Error.

2. Also, with the exception of the week of July 19, 2001, during which time Steven exercised extended visitation with his son, resulting in a fifty-percent abatement of child support in the amount of $82.50. Thus, Steven paid $107.50 for that week ($82.50 + $25.00). It is un-

Consequently, Steven made twenty-eight weekly payments of $25 equaling $700 towards his arrearage, before resuming his $165 per week payments on December 11, 2001.

However, shortly after February 11, 2002, Steven received a notice, purporting to be from the Title IV–D Prosecuting Attorney in Madison County, informing him that he was $7,999.92 in arrears on his child support and that this information would be conveyed to credit bureaus to be made a part of his credit record. The notice advised Steven that he should contact the Title IV–D Prosecutor's Office in writing if he wished to contest the information. Steven immediately contacted his attorney, who issued a letter requesting a review of the information on February 21, 2002. The letter was signed as received by the Title IV–D Prosecutor's Office on February 22, 2002.

Sometime after February 16, 2002, Steven received a notice, again purporting to be from the Madison County Title IV–D Prosecutor's Office, informing him that he could request a review of his child support obligation to determine whether an increase or decrease was warranted in the existing court order.

Sometime after April 6, 2002, Steven received another notice from the Title IV–D Prosecutor's Office informing him that an administrative review had been conducted in his case and that, based on that review, his case "does not meet the criteria for submission." (Appellee's App. p. 22). Steven inferred from this notice that the arrearage issue in his case had been resolved.

On April 8, 2002, Rodney Cummings (Cummings), the Madison County Prosecuting Attorney, filed his Appearance and Petition to Intervene with the domestic court. On April 23, 2002, Cummings, in his capacity as the Title IV–D Prosecutor, issued an Order/Notice to Withhold Income for Child Support to Steven's employer. The Order directed Steven's employer to withhold from his paycheck $200 per week for his child support obligation plus $25 per week towards his arrearage. Steven learned about the $225 per week withholding order when he received his paycheck and noticed that amount deducted from his earnings. Prior to receiving his paycheck that week, Steven had already made his customary $165 child support payment directly to the Madison County Clerk's Office.

On May 6, 2002, the Title IV–D Prosecutor issued a new Order/Notice to Withhold Income for Payment of Child Support to Steven's employer, directing the employer to withhold $165 per week for child support plus $25 per week towards his arrearage in lieu of the $225 withholding.

Steven filed his Petition for Termination of Wage Assignment and Determination of Arrearage on July 1, 2002. A hearing on Steven's petition was held in Title IV–D court on July 11, 2002, and August 6, 2002. On December 20, 2002, the Title IV–D trial court (trial court) issued its Findings of Fact, Conclusions of Law, and Order.

Steven now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Constitutionality of I.C. § 31–16–15*

■ Steven first argues that I.C. § 31–16–15, the statutory authority for the Title IV–D agency to issue child support income withholding orders, is unconstitutional. In particular, Steven contends that the statute is "unconstitutional in that it provides for the deprivation of [his] property

---

clear what calculation was used to derive the December 4, 2001 payment of $149.88.

(wages) resulting in an extra[-]legal taking without notice, opportunity to be heard (hearing) and reasonable judicial review by an impartial tribunal." (Appellant's Br. p. 7). Steven further asserts that "once a taking has occurred, [the statute] does not provide a remedy for the wrongful taking," all of which is a violation of his due process. *Id.*

However, Steven's argument in support of his allegations relates more to the IV–D Prosecutor's actions in applying the statute than to the language of the statute itself. In the same vein, Steven fails generally to support his argument with cogent reasoning as required by Ind. Appellate Rule 46(A)(8)(a). Accordingly, we find Steven's argument challenging the constitutionality of I.C. § 31–16–15 waived on appeal.

Waiver notwithstanding, Steven's argument is simply without merit. As discussed in the following section, all of the procedural due process requirements raised in Steven's contentions were provided by either I.C. § 31–16–15 or other applicable statutes or trial rules. Consequently, we are not compelled to address his allegation that the statutory scheme of I.C. § 31–16–15 is unconstitutional.

## II. *Due Process Violation*

■ Next, Steven argues that the Title IV–D Prosecutor's failure to comply with the notice and hearing requirements of I.C. § 31–16–15–7 violated his right to due process. The Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit any state action that deprives a person of life, liberty, or property without a fair proceeding. *Everhart v. Scott County Office of Family and Children,* 779 N.E.2d 1225, 1229 (Ind.Ct.App. 2002).

As with the previous issue, the manner in which Steven presents his argument is generally inadequate with regard to his citation to supporting authority. *See* App. R. 46(A)(8)(a). However, noting the extent to which the Title IV–D Prosecutor disregarded the notice requirements set forth in the child support income withholding statute, we are, nevertheless, compelled to address the resultant violation of Steven's right to due process. *See L.S. Ayres & Co. v. Hicks,* 220 Ind. 86, 99, 41 N.E.2d 195, 196 (Ind.1942)("while alleged errors not presented and discussed in the appellant's brief will be treated as waived, this court does not regard itself as required to accept or reject the specific reasons advanced by a litigant to sustain his contentions. [*internal citation omitted*]. The practice rule to the effect that alleged errors, not specifically pointed out in the appellant's brief, will be treated as waived was not intended to circumscribe the reviewing tribunal. The purpose of the rule is to relieve the court of the burden of searching the record and briefing the case and to place that responsibility on the party asserting error. It will not be carried so far as to require the court to close its eyes to that which is apparent").

In the instant case, the income withholding order, that was originally imposed by the domestic court, was terminated by the same court in its Order of July 22, 1997. Since that time, Steven had been paying his child support obligation directly to the Madison County Clerk's office. Thus, because no income withholding order was in effect at the time of the February 11, 2002 notice of arrearage, the Title IV–D agency would derive its authority to impose a withholding order under section 3 of the statute, which provides:

> In the case of a support order that is enforced by the Title IV–D agency after June 30, 1985, the Title IV–D agency may require an income payor to withhold income from:

(1) a delinquent obligor;

(2) an obligor who requests an immediate income withholding order; or

(3) the obligor if:

    (A) the custodial parent requests an immediate income withholding order;

    (B) the obligor is at least one (1) month in arrears; and

    (C) the Title IV–D agency determines that the request be approved;

despite the absence of a withholding order in the support order if the Title IV–D agency complies with the requirements imposed by sections 7, 10, 11, 13, and 14 of this chapter.

I.C. § 31–16–15–3. For purposes of I.C. § 31–16–15, an obligor is "delinquent" if he is the equivalent of one month in arrears in the payment of child support ordered by a court. I.C. § 31–9–2–36.

When the Title IV–D agency intends to implement an income withholding order for any of the reasons set forth in section 3 above, the Title IV–D agency must send a written notice to the obligor. I.C. § 31–16–15–7(a). Moreover, the notice to the obligor must contain a statement of the following:

(1) Whether the obligor is delinquent in the payment of child support.

(2) The amount of child support, if any, that the obligor is in arrears.

(3) That a certain amount of income is to be:

    (A) withheld under court order or action by the Title IV–D agency from the obligor's income; and

    (B) forwarded to the clerk of the court.

(4) That the total amount to be withheld under court order or action by the Title IV–D agency by the obligor's income payor from the obligor's income is the sum of:

    (A) the obligor's current monthly child support obligation;

    (B) an amount to be applied toward the liquidation of any arrearages; and

    (C) an optional fee of two dollars ($2), which is payable to and imposed at the option of the income payor, each time the income payor forwards income to the clerk of the court or other person specified in the notice to the income payor under this chapter; up to the maximum amount permitted under 15 U.S.C. 1673(b).

(5) That the provision for withholding applies to the receipt of any current or subsequent income.

(6) That the only basis for contesting activation of income withholding is a mistake of fact.

(7) That an obligor may contest the Title IV–D agency's determination to activate income withholding by making written application to the Title IV–D agency not later than twenty (20) days after the date the notice is mailed.

(8) That if the obligor contests the Title IV–D agency's determination to activate the income withholding order, the Title IV–D agency shall schedule an administrative hearing.

(9) That if the obligor does not contest the Title IV–D agency's determination to activate the income withholding order, the Title IV–D agency will activate income withholding.

(10) That income withholding will continue until a court or the Title IV–D agency terminates activation of income withholding.

I.C. § 31–16–15–7(b).

Here, Steven initially received a notice purportedly from the Madison County Title IV–D Prosecutor's Office dated February 11, 2002 (February 11 Notice). The

February 11 Notice informed him that the records of the Title IV–D Prosecutor's Office indicated that he was $7,999.92 in arrears on his child support. Steven was further informed that the Title IV–D Prosecutor's Office intended to report this information to credit reporting bureaus and that it would become part of his credit report. Steven was also advised that, if he wanted to contest the information, he should contact the Title IV–D Prosecutor's Office within twenty days from the date of the letter "to request a review of the information being reported." (Appellee's App. p. 8). However, the February 11 Notice contained reference to neither the Title IV–D Prosecutor's intent to implement an income withholding order nor the amount of child support and arrearage payment that would be withheld.

Steven contacted his attorney of record immediately. On February 21, 2002, Steven's legal counsel mailed a certified letter, return receipt requested, to the Title IV–D Prosecutor's Office in which she advised: "My client disputes this amount and upon review of the Court's and the Clerk's records, I can find no possible evidence that would support your allegation of such an arrearage. I request that you review your records and consider the following documents[.]" (Appellee's App. p. 10). Steven's legal counsel provided a brief chronology of the orders of the domestic court regarding support modifications and payment history, along with supporting documentation. A signature on the return receipt for Steven's certified letter acknowledges that the Title IV–D Prosecutor's Office received his response to their notice on February 22, 2002.

According to subsequent notices, an internal administrative review was conducted outside of Steven's presence sometime between February 21, 2002, and April 6, 2002. Thereafter, Steven received a notice

dated April 6, 2002 (April 6 Notice), informing him that an "Administrative Review was conducted in the above referenced case and our office has determined the following: [b]ased upon the information recorded on the arrearage calculation worksheet, your case does not meet the criteria for submission. Our office has adjusted the accounts accordingly and will notify the appropriate agency. If this was a tax review and your taxes are intercepted, please provide the original notice, which will indicate the amount intercepted, to our office. A request for a payor refund will be made." (Appellee's App. p. 22).

Steven understood the information in the April 6 Notice to mean that there was no arrearage and his case had been resolved. (Transcript p. 11). However, Steven subsequently became aware that an Order/Notice to Withhold Income for Child Support dated April 23, 2002 (April 23 Notice) had been issued to his employer. The April 23 Notice advised that Steven was at least 12 weeks in arrears on his child support payments and ordered his employer to withhold $200 per week in current support and $25 per week in past due support from Steven's paycheck.

In reviewing the procedure employed by the Title IV–D Prosecutor's Office in this matter, we find that the February 11 Notice to Steven was deficient in that it: 1) failed to place Steven on notice that the Title IV–D Prosecutor intended to implement an income withholding order, and 2) it failed to specify the amount of child support and arrearage payment that would be withheld. These deficiencies are contrary to the mandates of I.C. § 31–16–15–7(b)(3) & (4).

Moreover, although the Title IV–D agency may have conducted an internal review of Steven's case, I.C. § 31–16–15–7(a)(8) requires the Title IV–D agency to

schedule an administrative hearing if the Obligor contests an agency notice that there is a child support arrearage. Also, as the Obligor contesting a notice of child support arrearage, Steven had a right to be present at that hearing. Thus, the Title IV–D agency violated Steven's right to due process by failing to conduct a hearing in his presence. In addition, when the agency proceeded to execute the April 23, 2002 order to withhold $225 per week from Steven's paycheck, they further violated his right to due process. Accordingly, we conclude that Steven's right to due process was violated by the Title IV–D Prosecutor's failure to comply with the notice and hearing requirements of I.C. § 31–16–15–7.

### III. *Amount of Child Support Overpayment*

In addition, Steven asserts that the trial court erred in calculating the amount of child support credit he is due as a result of his overpayment. We agree.

■ In the present case, the trial court entered Findings of Fact and Conclusions of Law. When the trial court enters such findings, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issues upon which the court has not found. *See Scoleri v. Scoleri,* 766 N.E.2d 1211, 1214 (Ind.Ct.App.2002). Thus, in reviewing this judgment, we must apply a two-tiered standard. *See Carmichael v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001). First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *See Scoleri,* 766 N.E.2d at 1214. In deference to the trial court's proximity to the issues, we will reverse a judgment only when it is shown to be clearly erroneous. *Id.* A judgment is clearly erroneous when it is unsupported by the·findings of fact and

conclusions entered on the findings. *Id.* In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *Id.* However, while we defer substantially to findings of fact, we do not do so to conclusions of law. We evaluate questions of law de novo and owe no deference to a trial court's determinations of such questions. *Carmichael,* 754 N.E.2d at 625.

Here, the trial court entered the following Findings of Fact and Conclusions of Law relevant to determining whether Steven was in arrears on his child support payments or whether he overpaid:

### FINDINGS OF FACT

4. That on the 28th day of July 2000, the presiding [c]ourt of original jurisdiction issued an order setting child support at $165.00 per week with various other issues remaining to be heard on August 25, 2000.

5. [Steven] filed his Motion to Correct Error[ ] regarding the issues decided in this Order.

6. On December 21, 2000, the [c]ourt issued its Order regarding a change of custody and other matters and [Gail] filed her Motion to Correct Error[ ] regarding same.

7. That on May 1, 2001, the [c]ourt of original jurisdiction issued its Order determining the then existing retroactive support arrearage and the manner in which it was to be paid.

8. That [Steven], as soon as he was informed of the [c]ourt's Order regarding payment of the retroactive arrearage, made a payment via money order on said retroactive arrearage that same week even though he had already made

his regular support payment that week per the Clerk's records entered into evidence as Exhibit 1.

9. That pursuant to the July 8, 1997 Order of [c]ourt, [Steven] was granted extended visitations and "During any period that the child for seven days or more consecutively [sic], the child support shall abate by one-half" and this has never been modified.

10. That [Steven] had extended visitation with his child from July 4, 2001 to July 14, 2001 and again from December 25, 2001 to December 31, 2001, which resulted in a credit toward his child support in the amount of $165.00.

11. That sometime after February 11, 2002, [Steven] received notice (Exhibit 2), purportedly from the Madison County [Title] IV–D Prosecutor's Office (as shown by the letterhead contained in said Exhibit) alleging that he was $7,999.92 in arrears on his payment of child support. That the Madison County [Title] IV–D Prosecutor's Office did not generate Exhibit 2, but was generated by the "[S]tate" from Indianapolis.

12. That on February 21, 2002, counsel of record for the Respondent forwarded Exhibit 3, a letter via certified mail to the office of the Madison County [Title] IV–D Prosecutor (same also being the elected Prosecutor of Madison County) (hereinafter "Cummings"), that placed the State of Indiana, specifically the [Title] IV–D Prosecutor of Madison County on notice that a dispute existed as to the issue of past due and owing child support, offered an explanation (two accounts for the same recipient in the same cause of action) and Flowers Calculation showing that an arrearage did not exist. (See attached Exhibit 3 included by reference).

13. That neither Cummings [n]or the State of Indiana ever responded to the Flowers correspondence of February 21, 2002, although testimony established that it had [been] received by the office of the Madison County [Title] IV–D Prosecutor soon after February 21, 2002.

. . . .

15. That on or about April 6, 2002, via regular mail, [Steven] received Exhibit 5, which contained various paragraphs. Hand checked was the paragraph stating that this case did not meet the criteria for submission and the office has adjusted accounts accordingly. Pursuant to this correspondence, [Steven] believed that the error regarding arrearage of his child support was resolved and he continued to timely pay his weekly child support obligation of $165.00 per week by mailing a personal money order each week to the Clerk of the Court.

. . . .

17. That on the 23rd day of April, 2002, Cummings, without notice to [Steven], [Steven's] counsel of record, the [c]ourt of original jurisdiction or this [c]ourt, issued an "Order/Notice to Withhold Income For Child Support" to Flowers' employer, GM, in the sum of $200.00 per week in regular support and an additional $25.00 to be credited toward the payment of support arrears which was duly withheld from Flowers' wages.[ ] The order of the [c]ourt of original jurisdiction for child support was not $200.00 per week but $165.00.

18. That [Steven] had already for this same week mailed his money order in the amount of $165.00 for his child support to the Clerk of [ ] Madison County resulting in an overpayment for that week of $225.00.

19. That [Steven's] child support is $165.00 per week and no hearing had been held to determine any past due support.

20. That on May 6, 2002, Cummings issued a new "Order/Notice to Withhold Income For Payment of Child Support" without notice to [Steven], [Steven's] counsel of record, the [c]ourt of original jurisdiction or this [c]ourt which called for regular deductions of $190.00 per week, the sum of $165.00 per week to be applied to current support, plus the sum of $25.00 per week to be applied to [Steven's] "past due support", which was honored by [Steven's] employer.

21. That after two payments of $225.00, in May 2002, [Steven] discovered that $190.00 was thereafter withheld from his paycheck.

22. That [Steven] filed his Petition for Termination of Wage Assignment and Determination of Arrearage on July 1, 2002.

23. That the [Title] IV–D Prosecutor presented the [c]ourt at the hearing on July 11, 2002, Exhibit A, apparently prepared June 30, 2002, which is a calculation of arrearage. That this calculation had not been shown to [Steven] or his attorney, did not include any abatement for extended visitation, and does not include any payments from a "duplicate" account in the Support Clerk's office.

24. The [c]ourt finds that [Steven] should be given credit for some extended visitation after the [c]ourt's Order of 5–1–01, which found that the arrearage was $734.88. The [c]ourt declines to go behind said Order with regard to further visitation credits. [Steven] is also given credit for the payments in the duplicate Support Clerk's account and finds that [Steven] was in arrears in child support in the amount of $545.00 as of 3–31–02. Further no arrearage exists as of 8–6–02. [Steven] had overpaid his child support in the sum of $47.50 as of 8–6–02.

. . . .

CONCLUSIONS [OF] LAW

. . . .

7. [I.C. § 31–16–15–3] states that for a support order to be enforced by the Title IV–D agency, the agency *may* require an income payor to withhold income if the Obligor is at least one month in arrears. (emphasis in original).

8. The calculation of arrearage is fact sensitive and thus requires the right to a meaningful review upon notice before property (wages) of the Obligor are taken. In the instant case, errors in procedure may have occurred, but [Steven] has suffered minimal damage and should be reimbursed for the small amount of overpayment.

(Appellee's Br.App. pp. 1–7).

■ Our review of the record sheds little light on how the trial court arrived at the overpayment figure of $47.50 in its Finding of Fact number 24. Likewise, it is unclear how the trial court determined that Steven was $545 in arrears as of March 31, 2002. Accordingly, we remand to the trial court for a detailed calculation of the amount of Steven's child support overpayment. The amount of overpayment may then be credited to future child support payments to be made by Steven or refunded by Gail. *See Drwecki v. Drwecki,* 782 N.E.2d 440, 447 (Ind.Ct.App. 2003)(where this court held that the rationale underlying the general rule that "child support payments cannot be applied prospectively to support not yet due at the time of the overpayment," does not fully apply where obligor did not voluntarily build up a substantial credit) (quoting *Matson v. Matson,* 569 N.E.2d 732, 733 (Ind.Ct.App.1991)).

However, prior to determining the end result of Steven's child support overpayment, we remand to the trial court for determination of whether an arrearage ex-

isted at the time the February 11 Notice was issued, and, if so, in what amount. As set forth in Issue II above, the Title IV–D agency is authorized to implement an income withholding order *only* when: 1) the obligor is delinquent, meaning one month in arrears, 2) the obligor requests an income withholding order, or 3) the custodial parent requests an income withholding order, the obligor is at least one month in arrears, and the Title IV–D agency determines that the request should be approved. *See* I.C. § 31–16–15–3; I.C. § 31–9–2–36. Steven's weekly child support payments are set by court order at $165. Therefore, in order to be one month in arrears, Steven would have to miss four payments of $165 for a total of $660.

■ On May 1, 2001, the domestic court determined that Steven was $734.88 in arrears and ordered him to begin the Friday following the date of the order to pay $25 per week on his arrearage in addition to his child support obligation of $165 per week, for a total of $190 per week. Nevertheless, the February 11 Notice on which this entire Title IV–D action is based claims that Steven was $7,999.92 in arrears as of February 11, 2002. However, according to the payment history marked as Respondent's Exhibit 1, which was before the trial court at the hearing on July 11, 2002, it would appear that Steven paid the $734.88 arrearage in full by December 4, 2001. If Steven was not at least $660 or one month in arrears on his child support obligation, the Title IV–D agency was without authority to initiate the instant action.[3] Along with the notice deficiencies discussed above, this would constitute an additional violation of Steven's right to due process. *See L.S. Ayres & Co.*, 220 Ind. at 99, 41 N.E.2d at 196 (wherein our supreme court held that we may consider alleged errors insufficiently raised on appeal when the error is so apparent that we refuse to close our eyes to it).

Consequently, we remand this case to the trial court for further proceedings to determine first, whether the Title IV–D agency possessed the statutory authority to initiate this action, and, second, if so, to set forth a calculation determining the proper amount of overpayment to be credited to Steven's child support account against future payments or refunded by Gail. In the event the Title IV–D agency was without authority to initiate this ac-

---

3. Indeed, at the hearing to review the implementation of the income withholding order issued by the Title IV–D Prosecutor, the following exchange was had between the trial court and the Title IV–D Deputy Prosecutor:

THE COURT: What I want to know is the State's position on the notice to this gentleman that he was some $8,000.00 behind[.]
THE STATE: I don't know.
THE COURT: Do you know today is that your position that he is that much behind? Or is it that he's basically $2.00 behind? If you know.
THE STATE: My position today would be based on our calculation and based on the record of the most recent payment on 7/2, uh, if you credit that against what our calculation of June 30th, the arrearage only be $2.50. That is my position today. As far as that notice that went out, I don't know if that was a typographical error or what that was.
THE COURT: [All right.] You don't know today. That's fine. Mr. Cummings would not know.
THE STATE: I would not believe so.
THE COURT: Is there anybody who's been subpoenaed here who know [sic]? Have you subpoenaed anybody that would know where that letter came from about the $8,000.00?
STEVEN'S COUNSEL: Your Honor, I have subpoenaed Mr. Cummings because he's the one in charge. No, I have no idea where it came from[.]
THE COURT: All right.
STEVEN'S COUNSEL: I personally though called and that was their position at that time that was the arrearage.
(Tr. p. 23).

tion, i.e., Steven was not at least one month or $660 in arrears on February 11, 2002, the trial court must still determine the amount of overpayment and the income withholding order must be terminated. Steven may then resume paying the Madison County Clerk directly.

### IV. *Attorney Fees and Lost Wages*

Lastly, Steven contends that the trial court abused its discretion in declining to award his attorney fees and lost wages as a result of the instant action. Steven requests that either the Title IV–D agency or Gail should pay this award.

██ Indiana Code section 31–16–11–1 provides for the trial court to order a party to pay reasonable costs and attorney fees incurred in maintaining or defending any proceeding. In its Findings of Fact, Conclusions of Law, and Order, the trial court declined to order Gail to pay reasonable costs and attorney fees incurred by Steven. The trial court has broad discretion in assessing attorney fees, and reversal is warranted only when the trial court's decision is clearly against logic of the facts and circumstances of the case. *Cannon v. Cannon,* 677 N.E.2d 566, 570 (Ind.Ct.App. 1997), *trans. denied.* In our review of the record, we find no abuse of discretion in the trial court's determination not to order Gail to pay Steven's attorney fees and lost wages.

Moreover, I.C. § 31–16–11–2 exempts the Title IV–D agency and its prosecutors from awards of costs and attorney fees against them. For these reasons, we find no abuse of discretion in the trial court's refusal to award Steven attorney fees and lost wages as a result of the Title IV–D action.

### CONCLUSION

Based on the foregoing, we find that: 1) Steven waived his constitutional challenge of I.C. § 31–16–15 on appeal; 2) Steven's right to due process was violated by the Title IV–D agency's failure to follow the notice requirements of I.C. § 31–16–15–7; 3) the trial court erred in failing to set forth a coherent calculation of Steven's child support overpayment; and 4) the trial court did not abuse its discretion in declining to award attorney fees and lost wages to Steven.

Remanded with instructions.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs as to Parts II, III and IV and concurs in result as to Part I.