Lowell J. PFLUM, Appellant–Plaintiff,

v.

**WAYNE COUNTY BOARD
OF COMMISSIONERS,**
Appellee–Defendant.

No. 81A05–0712–CV–741.

Court of Appeals of Indiana.

Aug. 25, 2008.

Gary E. Smith, Smith Law Office, Connersville, IN, Attorney for Appellant.

Joseph Dietz, Wayne County Board of Commissioners, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Lowell J. Pflum appeals the judgment in favor of appellee-defendant Wayne County Board of Commissioners (the Board), claiming that the evidence was insufficient to support the conclusion that the Board's improvement project had not resulted in the discharge or casting of surface water upon Pflum's lot in accordance with the common enemy doctrine. Finding that the trial court properly applied the common enemy doctrine in determining that Wayne County (the County) did not collect surface water and cast it on Pflum's property, we affirm the judgment of the trial court.

### FACTS

In 1992, Kay and Lowell Pflum (collectively, the Pflums) entered into an informal land contract with James Jones for the purchase of a residence and additional acreage in Wayne County. At that time, the Pflums began farming a portion of the ground, but they did not move into the residence until sometime in 1995.

The residence is approximately 400 feet from Sorber Road, a county highway that runs east and west. The Pflums' yard and the surrounding areas are the natural destination for rainwater from a watershed that is located approximately 580 acres to the north. The drainage from the watershed flows to the point of the Pflums' front yard, across their driveway, around the house, and continues to the south. Prior to the commencement of the project, water coming down from the watershed traveled under an old, deteriorating, and narrow culvert and passed under Sorber Road, and there was a curving, meandering ditch that traveled through the Pflums' yard. During moderate rainfall, the culvert would channel the water directly into the Pflums' yard. However, during heavy rainfall, the water would overflow and cover an area about 450 feet wide. As a result, the surrounding areas—including the Pflums' yard—would flood. Even when water did not spill over the road, it collected in the middle of the Pflums' yard. The Pflums' driveway would also flood and water would push the gravel into the adjacent field. Most of the rainwater that came down from the fields traveled through the culvert.

In October 1992, the County commenced its improvement project to the area of Sorber Road that was directly in front of the Pflums' residence. Assistant County Engineer David Cheeseman believed that there "was a deteriorating structure that needed to be replaced to allow traffic to continue to use the road." Tr. p. 162. As a result, the County decided to replace the culvert and install three new canisters or pipes, which provided a forty-four square foot opening. The opening of the canisters was larger than the culvert, and a lesser concentration of water flowed through them. The use of such canisters is a standard practice for drainage purposes in Indiana counties, and nearly 1500 canisters had been installed in Wayne County.

To provide enough cover over the canisters, Sorber Road had to be raised. According to Don Jackson, the County engineer, the highway superintendent was directed to raise Sorber Road at least one inch, which would provide the minimum twelve inches of needed cover. As a result, the road was gradually raised from both sides. Had the county not raised Sorber Road in this fashion, motorists would experience an impact akin to hitting a curb. The County also replaced the "squiggly line" ditch in the Pflums' yard with a larger swale immediately to the south of the canisters. Thus, the water that had previously flowed over the road now passes to the canisters, which is apparently blocked by the raised elevation of the road.

Notwithstanding the County's completion of the project, the Pflums initiated an action in August 2002 against the Board, demanding that the County be enjoined from discharging water onto their yard.[1] The Pflums also sought an order for the County to remove the canisters. In particular, the Pflums' third amended complaint filed on July 22, 2005, provided as follows:

6. By reason of the ... concentrated discharge of waters on Plaintiffs' premises, which discharge is at the direction and control of Defendants, its agents, and employees, Plaintiffs have been injured, annoyed, and damaged in excess of eight years and Plaintiffs are still being injured, annoyed and damaged in that the said continued concentrated discharge of water causes water to stand for days in the Plaintiffs' residential front lawn near the Plaintiffs' residence and continues to wash out and flood the driveway to the Plaintiffs' residence interfering thereby with Plaintiffs' (and their invitees and licensees), ingress and egress to Plaintiffs' residence.

7. The Plaintiffs have requested and demanded the Defendants remove the canisters and/or correct the said concentrated discharge of surface water onto the Plaintiffs' premises in order to abate the said nuisance.

8. The Defendants have refused to remove the canisters, to alter the existing, design, or in any other way abate the nuisance.

9. The Defendants have indicated that they will continue to collect and discharge the said surface water onto the Plaintiffs' premises in spite of the interference and continuing wrong done to Plaintiffs.

10. By reasons of the foregoing continuing wrong, the Plaintiffs have no adequate remedy at law.

11. The acts of the defendants are repressive, and vexatious and are a positive, aggressive wrong.

WHEREFORE, Plaintiffs demand judgment:

First, that the Defendants be enjoined and restrained from maintaining the existing surface water drainage and related water drainage design;

Second, that the Defendants be enjoined and restrained from concentrating and discharging surface water onto the Plaintiffs' premises;

Third, that the Defendants be ordered and directed to remove the canisters that cause the on-going and continuing damage to Plaintiffs' premises;

---

1. Kay Pflum died on July 26, 2006, leaving Lowell the sole property owner and plaintiff in the action.

Fourth, that the Defendants be held liable for the reasonable legal fees and Court costs incurred by Plaintiffs herein.

Appellant's App. p. 68.

Following a bench trial on September 13, 2007, the trial court found for the Board and entered the following findings of fact and conclusions of law:

10. Prior to 1992[,...] Sorber Road required repair and maintenance due to flooding ... during periods of heavy rainfall.

11. In October 1992, the Defendant, acting through its Wayne County Highway Department, replaced the cement culvert with three forty foot long canisters in the same location and approximately the same size as the culvert.

12. The new canisters had a combined opening size of 40.5 square feet and a combined width of approximately 16½ feet. The culvert had an approximate opening of 39 square feet.

13. The elevation of Sorber Road was raised approximately one to six inches in front of the Plaintiff's residence in order to cover the canisters, and the canisters extended beyond the county easement onto the Pflum property.

14. The 1992 bridge was designed to carry water in the same manner as the old cement culvert. Defendant did not create any artificial channels to divert or collect the water.

15. The parties agree the Common Enemy Doctrine is applicable to this case and the factual dispute is whether the Defendant by raising the level of Sorber Road collected the surface water and cast it upon the Plaintiff's land.

16. There is no evidence to establish Defendant, by raising the level of Sorber Road or any other action, collected surface water and cast it upon Plaintiff.

17. Defendant did not thereby incur liability pursuant to the Common Enemy Doctrine.

*Id.* at 8–9. Pflum now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Where, as here, the trial court has entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Bowyer v. Ind. Dep't of Natural Res.*, 882 N.E.2d 754, 761 (Ind.Ct. App.2008). The trial court's findings and conclusions will be set aside only if they are clearly erroneous; that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Id.*

We also note that because Pflum bore the burden of proof regarding his claim, he is appealing from a negative judgment. *Nodine v. McNerney*, 833 N.E.2d 57, 65 (Ind.Ct.App.2005). In these situations, "we will reverse the trial court's judgment upon this issue only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court." *Id.*

## II. Pflum's Contentions

 In addressing Pflum's claim that the trial court erroneously entered judgment for the Board because it misapplied the provisions of the common enemy doctrine, we initially observe that this doctrine declares that surface water which does not flow in defined channels is a common enemy and that each landowner may deal with it in such a manner as best suits his own convenience. *Argyelan v. Haviland,* 435 N.E.2d 973, 975 (Ind.1982). These sanctioned dealings include walling the water in or out, diverting it, or accelerating its flow by any means. *Id.* However, a landowner may not collect or concentrate surface water and cast it, in a body, upon his neighbor. *Id.* at 976. This point is further clarified as throwing or casting surface water on one's neighbor "in unusual quantities so as to amplify the force at a given point or points." *Id.* However, it is not unlawful to accelerate or increase the flow of surface water by limiting or eliminating ground absorption or changing the grade of the land. *Id.* And "it is one thing to grade a highway and cast off artificial water as a consequence of . . . grading, and quite another thing to change the natural flow, unite artificial channels, increase the volume of water, and cause it to flow upon private property in an increased volume." *Patoka Twp. v. Hopkins,* 131 Ind. 142, 30 N.E. 896, 897 (1892).

We also note that surface water has been defined as "water from falling rains or melting snows which is diffused over the surface of the ground or which temporarily flows upon or over the surface as the natural elevations and depressions of the land may guide it but which has no definite banks or channel." *Bulldog Battery Corp. v. Pica Inv., Inc.,* 736 N.E.2d 333, 339 (Ind.Ct.App.2000). It has also been determined that if the natural depressions and elevations of the land form a way for water but such way has no well defined banks or channel and carries no water except that which drains into it from adjoining lands, then such way is not a natural water course but a mere surface drain. *Id.*

In *Argyelan,* the defendants constructed improvements on their lot that included two commercial buildings, pavement, and fill material where grass and trees were once located. 435 N.E.2d at 974. The Havilands were adjoining property owners whose lot was higher than that of the Argyelans before the improvements were made. After the construction, the Havilands complained of considerable surface water drainage from the Argyelans' property, which caused damage to their lot. Thus, the Argyelans created concrete curbing along the property line that varied in elevation between six inches and two feet above grade. However, when a heavy rain occurred, water accumulated behind the curb and flowed over it.

Although our Supreme Court observed that the improvements made by the Argyelans limited or eliminated ground absorption and the changing of the grading of the land, such actions were not impermissible under the common enemy doctrine. *Id.* at 976. Additionally, the only evidence of water being diverted onto the Havilands' property pertained to the occasional overflow over the concrete curbing. Thus, it was determined that the Argyelans did not conduct the water "by new channel in unusual quantities" or "collect the water in a volume and cast it" upon the Havilands' property. *Id.* Therefore, no liability under the common enemy doctrine attached. In reaching this result, the *Argyelan* court observed that

> [t]he right of an owner of land to occupy and improve it in such a manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon,

is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owner that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface, or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into or over the same in greater quantities or in other directions than they were accustomed to flow.

. . .

The obstruction of surface water or an alteration in the flow of it affords no cause of action [o]n behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise or dominion over his own soil.

*Id.* at 976–77 (citing *Taylor, Administrator v. Fickas,* 64 Ind. 167, 173 (1878)).

■ In this case, Pflum maintains that the trial court erred in finding that the County did not "collect water" and "cast" it upon his property after the County raised and graded Sorber Road so the water could flow through the new canisters. Appellant's Br. p. 20. Notwithstanding this claim, the evidence presented at trial established that the County raised the grade on Sorber Road to ensure sufficient cover over the canisters that were installed. The culvert was replaced to prevent standing water on Sorber Road during heavy rains, and the purpose of the canisters was to prevent flooding over the road. Tr. p. 203. Indeed, the County did not create any artificial ditches in connection with the project. *Id.* at 185–86. Rather than interrupt or change the natural flow of the water, the County did nothing to alter the natural flow of the 580–acre watershed. Moreover, Pflum ac-

knowledged that the new canisters resulted in decreased concentration of water that flowed under Sorber Road. Tr. p. 126–27; Appellee's App. p. 87. Thus, the trial court properly determined that the County's replacement of the old culvert with the canisters did not change the flow of water onto Pflum's property.

■ Additionally, while Pflum argues that the swale that replaced the ditch in his yard amounted to the casting of water onto his property, we note that the common enemy doctrine applies only to landowners who make improvements on their own property and not to landowners who make improvements on a neighbor's land. *Harlan Bakeries, Inc. v. Muncy,* 835 N.E.2d 1018, 1033 (Ind.Ct.App.2005). Moreover, Pflum apparently ignores the meaning of "collecting and casting" water within the context of the common enemy doctrine. Although the County's raising of Sorber Road may have caused damming and the "collecting" of water, *Argyelan* specifically permits the walling in and walling out of water. 435 N.E.2d at 975. Moreover, a municipality is permitted to grade roads to the detriment of adjoining property owners in the absence of negligence in the design and construction of such, without the government entity incurring liability under the common enemy doctrine. *Davis v. City of Crawfordsville,* 119 Ind. 1, 21 N.E. 449, 449 (1889). Here, Pflum did not advance a negligence claim.

Finally, there is no evidence that the County created any artificial channels to divert or collect water in the design and/or the installation of the canisters. And Pflum failed to establish that the County altered any natural watercourse or did anything to disturb the natural tendency for the watershed to drain directly to Pflum's yard. Therefore, because the County was permitted to grade Sorber Road to wall in and wall out the water, the

trial court's determination that the County did not create any artificial channels within the meaning of the common enemy doctrine was not clearly erroneous. For these reasons, the trial court properly determined that the Board was not subject to liability under the common enemy doctrine.

The judgment of the trial court is affirmed.

MATHIAS, J., and BROWN, J., concur.