**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**RICHARD RANUCCI**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**LOWELL A. SHROYER**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GAIL EISENHUT, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1208-DR-633 |
| | ) | |
| RICHARD EISENHUT, M.D., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick McCarty, Judge
The Honorable Burnett Caudill, Magistrate
Cause No. 49D03-9308-DR-1383

**March 22, 2013**

**OPINION – FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Gail Eisenhut appeals the trial court's judgment in favor of her ex-husband, Richard Eisenhut, in the amount of $19,250. We reverse.

**Issue**

Gail raises three issues, which we combine and restate as whether the trial court properly ordered her to pay $19,250 to Richard to reimburse him for child support payments he made after their daughter turned twenty-one.

**Facts**

Gail and Richard were divorced in 1995. Their daughter, Brittany, was born in February 1990. The dissolution decree granted primary custody of Brittany to Gail and ordered Richard to pay $250 per week, or $1075 per month, in child support, via income withholding. The decree contained no language as to when Richard's support obligation would end. The trial court subsequently issued an order to Richard's then-employer to withhold $1075 per month from his pay for child support. Richard's support obligation was increased to $1375 per month in 2004. In 2009, Richard changed employers. At that time, he voluntarily arranged for his support obligation to continue to be withheld from his pay; there was no court order that required income withholding specifically as to this employer.

Brittany turned twenty-one in February 2011. At the time, she was attending Butler University and continuing to live at home with Gail. Although Gail and Richard had previously informally discussed his contributing to Brittany's college expenses, Gail

2

never obtained an order requiring him to do so. Richard took no action to discontinue paying support for Brittany until April 27, 2012, when he filed a petition to discontinue paying support. Although Richard was aware that the $1375 was continuing to be deducted from his monthly pay and thought that his support obligation should have ended when Brittany turned twenty-one, he admittedly had "no good reason" for waiting fourteen months to contact his attorney to see how to go about terminating his support payments and said that his current wife had cajoled him into doing so. Tr. p. 13. After Richard filed his petition to discontinue paying support, Gail stipulated that he was entitled to do so, effective immediately. She also repaid the most recent monthly payment she had received after the petition was filed to Richard.

Richard's petition also sought to have Gail repay $19,250 in support she had received after Brittany turned twenty-one. Gail did not agree to do so. The trial court conducted a hearing on this issue on June 20, 2012, after which it found that Richard "has involuntarily overpaid child support" in the amount of $19,250 and entered a judgment against Gail in that amount. App. p. 14. Gail now appeals.

**Analysis**

Rulings concerning child support, including matters of overpayment, are committed to the trial court's discretion. Beckler v. Hart, 660 N.E.2d 1387, 1389 (Ind. Ct. App. 1996). An abuse of discretion occurs in a trial court's ruling if it is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misapplied the law. Fackler v. Powell, 923 N.E.2d 973, 980 (Ind. Ct. App. 2010).

3

The trial court here entered some limited sua sponte findings with its order. Sua sponte findings only control issues that they cover, while a general judgment standard applies to issues upon which there are no findings. Morgal-Heinrich v. Heinrich, 970 N.E.2d 207, 210 (Ind. Ct. App. 2012). We may affirm a general judgment with findings on any legal theory supported by the evidence. Id. As for any findings that have been made, they will be set aside only if they are clearly erroneous. Id. A finding is clearly erroneous if there are no facts in the record to support it, either directly or by inference. Id.

There is no doubt here that Brittany was emancipated as a matter of law for child support purposes when she turned twenty-one in February 2011 and that Richard's legal obligation to support her ended on that date. See Willard v. Peak, 834 N.E.2d 220, 225 (Ind. Ct. App. 2005) (citing Ind. Code § 31-16-6-6).[1] Nor was there a post-secondary educational support order in place that required Richard to contribute to her college education despite her emancipation. And, unlike other child support modification requests, a termination of support based upon emancipation dates back to the actual date of emancipation, not the date the petition to terminate support was filed. See Hirsch v. Oliver, 970 N.E.2d 651, 660 (Ind. 2012). The question in this case is whether Gail was required to reimburse Richard for support payments that continued to be withheld from

---

[1] Effective July 1, 2012, the legislature amended Indiana Code Section 31-16-6-6 to lower the automatic age of emancipation from twenty-one to nineteen. See Hirsch v. Oliver, 970 N.E.2d 651, 655 n.1 (Ind. 2012).

4

his paycheck after Brittany's emancipation and before he petitioned to terminate his support obligation.

The well-established rule in Indiana is that overpayments of child support are generally viewed as voluntary and gratuitous. See, e.g., R.R.F. v. L.L.F., 935 N.E.2d 243, 252 (Ind. Ct. App. 2010). Moreover, and importantly for this case, we have applied this rule in the context of overpayments made after a child's automatic emancipation. In Olson v. Olson, 445 N.E.2d 1386 (Ind. Ct. App. 1983), as here, a father continued paying child support for a child well after the child had turned twenty-one. Approximately a year after the child had turned twenty-one, the father filed a petition seeking to credit the extra year of support he had paid for his emancipated child against a support arrearage he had accumulated with respect to his other two children. We held the father was entitled to no such credit. We first noted that the father either could have unilaterally stopped paying support for that child on his twenty-first birthday, or petitioned the trial court prior to the twenty-first birthday to stop paying support as of that date, which we described as "perhaps the wiser course." Olson, 445 N.E.2d at 1389. We then stated:

> Unrequired payments made by a non-custodial parent for the benefit of children must be considered a gratuity or a voluntary contribution. They should not be considered a prepayment of the support obligation. Nor should they be credited against arrearages due with respect to other children.
>
> It is true that the Father's unrequired payments here are easily identifiable and provable. In addition, it may be observed that the rationale which forbids credit against future support does not apply here. The purpose of providing "regular uninterrupted income for the benefit of that parent's

5

> children" would not be thwarted. Nevertheless, we recognize that the parents in intact families often contribute, to the extent of their ability, to their children's support even after their children have reached the age of twenty-one. When the need exists, such gestures of familial affection, solidarity and support are to be commended, if not encouraged. Similar acts involving parent-child in a dissolved marital relationship are entitled to judicial recognition. This is true because in the formulation and enforcement of support orders the courts seek to eliminate or minimize the prejudicial economic impact of dissolution.

Id. at 1389-90 (citations omitted). It is true that Olson concerned credit against a support arrearage for other non-emancipated children, which is not the case here. Nonetheless, whether an arrearage credit or a judgment for support reimbursement is at issue, the effect on a parent who received the support overpayment as trustee for the child is effectively the same—he or she is deprived of money already paid by the obligor.[2] This is especially true here, in that Brittany was still living with and dependent upon Gail and attending college full-time after her automatic emancipation.

The trial court here expressly found that Richard had "involuntarily overpaid" child support for Brittany's benefit, thus avoiding the rule regarding such overpayments being considered gratuitous and not subject to reimbursement. App. p. 14. However, there is no evidence in the record that would support such a finding and it is clearly erroneous. This court previously has found overpayments of child support to be involuntary where an obligor's tax refund had been intercepted by the Internal Revenue Service. See Carpenter v. Carpenter, 891 N.E.2d 587, 601 (Ind. Ct. App. 2008); Matson

---

[2] If anything, having a large monetary judgment entered against a parent may be more damaging than a future reduction in other child support payments.

6

v. Matson, 569 N.E.2d 732, 734 (Ind. Ct. App. 1991). We also have found an involuntary overpayment of child support where it was occasioned by a violation of due process by a Title IV-D agency. Flowers v. Flowers, 799 N.E.2d 1183, 1192 (Ind. Ct. App. 2003). In Drwecki v. Drwecki, 782 N.E.2d 440, 447 (Ind. Ct. App. 2003), we found an involuntary overpayment of support in a situation where the trial court had held a hearing with the parties before a child's emancipation and entered an order indicating that the father's support amount would be reduced after emancipation (with support remaining for another child), but the court failed for twenty-five weeks after emancipation to enter an order fixing the reduced support amount and the father's paychecks had been subject to an income withholding order for the higher amount during that time.

Here, Richard was not compelled to overpay child support because of improper or erroneous government action, unlike in Carpenter, Matson, or Flowers. Moreover, this case is unlike Drwecki, where the issue of the child's emancipation and corresponding reduction in the father's support obligation had been noted prior by the trial court prior to emancipation taking place, but the trial court had erroneously continued father's support obligation for twenty-five weeks after emancipation. Rather, there simply was a failure on the part of Richard to take any action to terminate his support obligation for over a year after Brittany's emancipation, which was precisely the scenario in Olson. Richard testified at the hearing that he had assumed support would automatically stop after Brittany turned twenty-one, and that he did not know how to terminate his support

7

obligation after he noticed that the $1375 was continuing to be withheld from his paychecks every month. However, Richard's income was being withheld from his present employer via his own voluntary wage assignment, not pursuant to a court order, and there is no evidence he explored the possibility of unilaterally terminating that wage assignment. Cf. Carpenter, 891 N.E.2d at 600 (noting that eight days after trial court entered order finding father had repaid support arrearage, father adjusted his voluntary wage assignment through his employer to reduce the amount withheld for child support). Nor did Richard seek legal advice from his attorney, who has represented him since 1997 in matters involving Gail and Brittany, until a few days before he filed his petition to terminate his support obligation. In sum, we believe Richard's own testimony that he had "no good reason" for waiting fourteen months to try to terminate his support payments is conclusive evidence that he voluntarily made those payments while under no compulsion to do so. Tr. p. 13.

In addition to ordering reimbursement of overpaid child support in cases where the overpayment was "involuntary," such reimbursement may be ordered where there is evidence the obligor made the overpayment as the result of an erroneous belief, fraudulently induced by the other parent's misrepresentation of fact, that the amount paid was necessary to discharge a duty. Gilbert v. Gilbert, 777 N.E.2d 785, 793-94 (Ind. Ct. App. 2002); Best v. Best, 470 N.E.2d 84, 88 (Ind. Ct. App. 1984). There is no evidence of any misrepresentation by Gail. Richard clearly was aware of when Brittany's twenty-first birthday was. Additionally, the undisputed evidence is that during the entire time

8

Richard overpaid child support, Brittany in fact was still entirely dependent upon Gail for her living expenses while she was living at home and attending college. Thus, Gail was not pocketing the overpaid child support for her sole benefit.[3] Having found the trial court's finding that Richard "involuntarily" overpaid child support to be clearly erroneous and there being no other basis upon which to affirm the trial court, we conclude it abused its discretion in ordering Gail to reimburse Richard for his overpaid child support.

**Conclusion**

We reverse the trial court's judgment against Gail for $19,250, as there is no evidence that this overpayment of child support by Richard was anything but voluntary and gratuitous.

Reversed.

BAKER, J., and RILEY, J., concur.

---

[3] We need not consider whether we might have reached a different result in this case had Gail continued accepting payments from Richard after Brittany had moved out of the house and/or become self-sufficient.

9