

FILED

Mar 22 2018, 5:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen R. Snyder
Randall L. Morgan
Snyder Morgan Federoff & Kuchmay LLP
Syracuse, Indiana

ATTORNEY FOR APPELLEES

Zachary J. Stock
Zachary J. Stock,
Attorney at Law, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| N.G. Hatton Trust, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Robert D. Young and Ellen M. Young, <br> *Appellees-Defendants.* | March 22, 2018 <br><br> Court of Appeals Case No. 92A03-1708-PL-1818 <br><br> Appeal from the Whitley Superior Court <br><br> The Honorable J. Brad Voelz, Judge *Pro Tempore* <br><br> Trial Court Cause No. 92D01-1110-PL-262 |

**Bradford, Judge.**

# Case Summary

[1] This case involves a dispute between owners of adjoining lakefront lots on Shriner Lake in Whitley County, Indiana. Appellant-Plaintiff the N.G. Hatton Trust ("the Trust")[1] appeals from the trial court's order concluding that Appellees-Defendants Robert D. Young and Ellen M. Young ("the Youngs") owed no duty to the Trust pursuant to the common enemy doctrine and the county's zoning ordinance. Specifically, the Trust claims that the trial court improperly found that the water diverted from the Youngs' property was surface water for purposes of the common enemy doctrine, and that the county's zoning ordinance did not create a private right of action based on the Youngs alleged violations and resulting harm to the Trust's property. Because we disagree, we affirm.

# Facts and Procedural History

[2] The Trust has owned property next-door to the Youngs' property since 1999. The Youngs applied for and received a permit to build a new home on their lot in late 2006. (Tr. Vol. I pp. 46, 165). The new home is further up the hill from the old Young residence and adjacent to the Hatton home. (App. p. 10). During the course of the construction, the Youngs also raised their ground with

---

[1] The property at issue is held in trust for the benefit of the Hatton family.

fill between four and six feet. (App. p. 10). Construction was completed in July of 2007. (Tr. Vol. I p. 47)

[3] During and after heavy rains, since the construction of the Youngs' new home, water flows across their driveway before accumulating in a rock bed. The water then crosses the property line, causing damage to the Trust's concrete sidewalk and stairs as it travels downhill to the lake. (App. p. 11). In addition, fill, including rocks, mud, and sediment, from the Young's construction washed onto the Trust's property. (Tr. pp. 29-30, 36, 109, 182)

[4] The Trust filed a negligence complaint against the Youngs on October 24, 2011. (App. Vol. II p. 2, 19–21). According to the Trust, the Youngs breached a duty to "not divert surface water in a narrow channel onto [the Trust]'s property" when they constructed the new home farther up the hill. (App. Vol. II pp. 19–20). In the alternative, the Trust claimed that the Youngs were negligent *per se* for their alleged failure to abide by certain sections of the Whitley County Zoning Ordinance ("the Ordinance") in the construction of their new home. (App. Vol. II p. 20). The Youngs answered the complaint and denied that they negligently caused any damage to the home on the Trust property. (App. Vol. II pp. 3, 30–47). In a second amended answer, the Youngs raised the common enemy doctrine as an affirmative defense.

[5] A bench trial was held on April 28, 2017, and the parties subsequently submitted proposed findings. On July 14, 2017, the trial court entered findings of fact and conclusions of law. The trial court found that the water flowing

from the Youngs' property "wreaks havoc" on the Trust's property. App. Vol. II, pp. 10–11. However, the trial court also found that the water only occurs after heavy rains, the Youngs were not "collecting, concentrating, and casting it in a body upon" the Trust's property, and it was not "outside the definition of surface water." App. Vol. II, p. 15. Thus, the trial concluded that "pursuant to the common enemy doctrine, [the Youngs] ha[d] no duty to have constructed their home in any manner different from what they have done." App. Vol. II, p. 15. Having found no duty, the trial court rejected the Trust's negligence claim. The trial court also rejected the argument that a violation of the Ordinance created a private right of action for negligence *per se*.

# Discussion and Decision

[6]  The trial court entered findings of fact and conclusions thereon *sua sponte*. *Sua sponte* findings only control issues that they cover, while a general standard applies to issues upon which there are no findings. *Eisenhut v. Eisenhut*, 994 N.E.2d 274, 276 (Ind. Ct. App. 2013).

> We may affirm a general judgment with findings on any legal theory supported by the evidence. As for any findings that have been made, they will be set aside only if they are clearly erroneous. A finding is clearly erroneous if there are no facts in the record to support it, either directly or by inference.

*Id*.

The Trust contends that the trial court erred in concluding that the water running onto the Trust's property was surface water pursuant to the common enemy doctrine, and that the Ordinance, standing alone, did not impose a duty on the Youngs as it relates to the Trust.

# I. Negligence

## A. Surface Water

In addressing the Trust's claim that the trial court misapplied the provisions of the common enemy doctrine, "we initially observe that this doctrine declares that surface water which does not flow in defined channels is a common enemy and that each landowner may deal with it in such a manner as best suits his own convenience." *Pflum v. Wayne Cnty. Bd. Of Comm'rs*, 892 N.E.2d 233, 237 (Ind. Ct. App. 2008).

> These sanctioned dealings include walling the water in or out, diverting it, or accelerating its flow by any means. However, a landowner may not collect or concentrate surface water and cast it, in a body, upon his neighbor. This point is further clarified as throwing or casting surface water on one's neighbor in unusual quantities so as to amplify the force at a given point or points. However, it is not unlawful to accelerate or increase the flow of surface water by limiting or eliminating ground absorption or changing the grade of the land.

*Id*. (Internal cites and quotations omitted).

We also note that surface water has been defined as "water from falling rains or melting snow which is diffused over the surface of the ground which

temporarily flows upon or over the surface as the natural elevations and depressions of the land may guide it but which has no definite banks or channel." *Bulldog Battery Corp. v. Pica Inv., Inc.*, 736 N.E.2d 333, 339 (Ind. Ct. App. 2000). "It has also been determined that if the natural depressions and elevations of the land form a way for water but such way has no well defined banks or channel and carries no water except that which drains into it from adjoining lands, then such way is not a natural water course but a mere surface drain." *Pflum*, 892 N.E.2d at 237.

[10] The Trust maintains that the trial court erred in finding that the water flowing onto its property from the Youngs' property was "surface water" pursuant to the common enemy doctrine. In this case, the Youngs raised the level of their ground several feet when they constructed a new home on their property. After the construction, the Trust complained of considerable surface water from the Youngs' property, which caused damage to their lot. There is no evidence, however, that the Youngs were collecting the surface water and casting it onto the Trust's property. The Youngs' construction only altered the flow of the surface water, which is permissible under the common enemy doctrine. Thus, the trial court properly determined that the Youngs are relieved from potential liability regarding the surface water under the common enemy doctrine.

[11] We recognize that the application of the common enemy doctrine in this case may appear harsh. However, the law is this area is well-settled:

> [A]lthough the Common Enemy Doctrine may, at times, inflict hardships, it is as fair to one as it is to another—a guiding precept

of the law. Additionally, it has worked satisfactorily in this State from the beginning, and it is well understood. There has been no change in the forces that cause water to run down hill since the problems caused thereby were first considered and resolved in this State; and there is no basis for assuming that a change in the rules for coping with such problems would, over-all, reduce their number or make them any more palatable.

Although courts should not be slow to respond to changing conditions, changes in the established law are not warranted simply because it is imperfect.

*Argyelan v. Haviland*, 435 N.E.2d 973, 977 (Ind. 1982).

## B.    Mud, Rocks, and Sediment

[12]     The Trust also argues that the presence and quantity of mud, rocks, and sediment in the water pushes it outside the definition of "surface water" for purposes of the common enemy doctrine.  The Youngs argue that this issue was not properly raised at the trial court level.  We disagree.  The evidence included witness testimony that fill, including mud, rocks, and sediment, washed from the Young's property onto the Trust's property.  In addition, the Trust proposed the finding that "erosion was produced on the Young [property] which was detrimental to the [Trust property], an adjacent property." App. Vol. II p. 51.

[13]     As discussed in the previous section, however, the common enemy doctrine only applies to "surface water."  We would also reiterate that "surface water" has been defined as water from "falling rains" or "melting snow."  *Bulldog Battery Corp.*, 736 N.E.2d 333, 339 (Ind. Ct. App. 2000).  Rock, mud, and sediment are not mentioned in that definition.  "In our view, whether mud, silt,

or sediment contained in rainwater runoff is discharged in such quantities that the water ceases to be characterized as surface water is a question of fact." *Long v. INC Indus. Coatings, Inc.*, 908 N.E.2d 697, 706 (Ind. Ct. App. 2009); *see also Wells v. State Hwy. Comm'n*, 503 S.W.2d 689, 692-93 (Mo. 1973) (holding that the jury could find that the enormous content of mud (with water) discharged from the defendant's property and deposited into the plaintiff's lake over an extended period of time was not classified as a discharge of surface water).

The trial court was presented with all of the evidence, including photos of the mud, rock, and sediment on the Trust's sidewalk, but nevertheless found that "water has damaged and continues to damage all things along its path." App. p. 11. The trial court also specifically found that the water at issue was "surface water" pursuant to the common enemy doctrine. Consequently, the trial court did nor err when it found that the Youngs did not owe the Trust in regard to "the exercise of their water drainage rights." App. p. 17.

## II. Negligence *Per Se*

The Trust contends that it has a private cause of action under the Ordinance and is therefore entitled to pursue its claim that the Youngs were negligent *per se* when they allegedly violated the Ordinance. Accordingly, the Trust contends that the trial court erred in concluding otherwise.

"[N]egligence *per se* is the unexcused or unjustified violation of a duty prescribed by statute." *Brown v. City of Valparaiso*, 67 N.E.3d 652, 656 (Ind. Ct.

App. 2016). However, it should be noted that "not every statute creates an implied right of action, and a claim of negligence *per se* depends on a determination of legislative intent to make a defendant liable in tort." *Id*. at 660. Generally speaking, a private party may not "enforce rights under a statute designed to protect the public in general and which contains an enforcement provision." *Id*. at 658.

[17] The purpose of the Ordinance is described in Section 1.4:

> This Ordinance is intended to guide the growth and development of the County in accordance with the Whitley County Comprehensive Plan and for the following purpose.
>
> > A. To secure adequate light, air, and convenience of access; and safety from fire, flood, and other dangers;
> >
> > **B. To promote the public health, safety, comfort, convenience, morals and general welfare;**
> >
> > C. To plan for the future development of the County to the end;
> >
> > > 1. That the community grows only with adequate public ways, utility, health, educational, and recreational facilities;
> > >
> > > 2. That the needs of agriculture, industry, and business be recognized in future growth;
> > >
> > > 3. That residential areas provide healthful surroundings for family life;
> > >
> > > 4. That the growth of the community is commensurate with and promotes the efficient and economical use of public funds; and
> > >
> > > 5. That the community strives for high aesthetic value, quality planning and design.

WHITLEY COUNTY, IND., WHITLEY COUNTY ZONING ORDINANCE § 1.4 (2006) (emphasis added). The plain language of the Ordinance shows that the

purpose is to protect the public in general. Moreover, Section 13.11 of the same Ordinance contains clear enforcement provisions: "the Plan Commission or any enforcement official designated by this Ordinance [to] bring an action in the Circuit or Superior Court of the County to evoke any legal, equitable, or special remedy, for the enforcement of any ordinance[.]" App. Vol. II, p. 16. The Trust has failed to establish that it has a private right of action pursuant to the Whitley County Zoning Ordinance. Accordingly, the trial court did not err when it found that the Trust did not have a private right of action under the Ordinance.

[18] The judgement of the trial court is affirmed.

Robb, J., and Crone, J., concur.