**James F. McINTYRE and Norris Dean McIntyre, Appellants–Defendants,**

**v.**

**Rowan E. GUTHRIE, Rosemary Guthrie, William J. Guthrie, Mabel R. Guthrie, Kenneth W. Guthrie, and Betty Guthrie, Appellees–Plaintiffs,**

**and**

**Michael D. Dershem, Sr. and Carolyn Dershem, Appellees–Plaintiffs.**

**No. 88A05–9107–CV–240.**

Court of Appeals of Indiana, Fifth District.

July 30, 1992.

---

David A. Smith, McIntyre & Smith, Bedford, for appellants-defendants.

William Edward Jenner, Jenner & Auxier, Madison, for appellees-plaintiffs.

RUCKER, Justice.

James F. McIntyre and Norris Dean McIntyre (collectively referred to as "the McIntyres") appeal a trial court judgment in favor of lower riparian owners for property damage caused by the diversion of the course and flow of a waterway known as Guthrie Creek. The McIntyres raise four issues for our review which we consolidate and rephrase as follows:

1.  Did the trial court err in finding the McIntyres had diverted the course and flow of Guthrie Creek?

2.  Did the trial court err in not applying the common enemy doctrine?

3.  Did the trial court err in ordering judgment in favor of the lower riparian owners when the McIntyres had obtained a permit from the Indiana Department of Natural Resources to clear the channel along Guthrie Creek?

The McIntyres own real estate property adjacent to Guthrie Creek, a natural watercourse flowing toward the White River in Lawrence County, Indiana. Downstream from the McIntyres are two family farms, one of which is owned by the Guthrie family ("the Guthries") and another owned by Michael and Carolyn Dershem ("the Dershems"). The Guthrie property consists of 117 acres, twenty of which were used for raising crops prior to 1983. The Dershem property consists of over 64 acres, fourteen

of which were used for raising crops prior to 1983.

In early spring of 1983, the McIntyres, with the use of bulldozers and heavy equipment, cleared trees and brush from along the edges of the creek, straightened the creek bed, and widened its channel. After the work had begun, the Indiana Department of Natural Resources (DNR) received a complaint about the work being done on Guthrie Creek and informed the McIntyres that their work could not be continued without DNR approval.[1] In March of 1983, the McIntyres filed with the DNR an Application for Approval of Construction in a Floodway. In June of 1983, DNR issued a certificate of approval which authorized the McIntyres to clean out the creek subject to several conditions, one of which was that no further inchannel excavation be done. The DNR did not investigate the potential effects of the McIntyres' project on downstream riparian owners.

The topographical changes resulting from the McIntyres' work caused the water to pass through Guthrie creek at a greater speed, intensity, and volume than before. The increased water flow also resulted in a broader flood plain on the Guthries' and the Dershems' properties, erosion along the banks of Guthrie Creek, and accumulation of trees and debris in the fields contiguous to Guthrie Creek.

After 1983, the Dershems and the Guthries were unable to farm their land due to the accumulation of surface water and the effects of erosion. The fair market value of the Guthrie property prior to 1983 was $58,500; after the McIntyres' work on Guthrie Creek, the fair market value of the same property decreased to $24,100. The Dershem property also decreased in value from $32,015 to $21,507. In addition, the

new condition of the land made harvesting of the Dershems' timber crop impossible.

In 1987, the Guthries and the Dershems filed separate actions against the McIntyres seeking a permanent injunction, special damages, and costs. The trial court consolidated the actions for trial and judgment. After a bench trial, the trial court entered judgment in favor of the McIntyres holding the Guthries and the Dershems were barred from pursuing a suit for damages and injunctive relief because they had failed to exhaust their administrative remedies. On appeal, this court held the trial court erred in refusing judicial review based on failure to exhaust administrative remedies because no adequate administrative channels existed. We reversed the judgment and remanded the matter to the trial court for findings and conclusions and to render judgment on the Guthries' and the Dershems' combined action. *Guthrie v. McIntyre* (1990), Ind.App., 563 N.E.2d 651.

On remand, the trial court entered Special Findings of Facts and Conclusions of Law and ordered judgment in favor of the Guthries in the amount of $34,400.00 and in favor of the Dershems in the amount of $43,308.50. The trial court denied the Guthries' and the Dershems' request for injunctive relief. The McIntyres now appeal.

Where the trial court enters special findings we apply a two-tiered standard of review. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, *trans. denied.* We first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* Special findings and the judgment flowing therefrom will be set aside only if they are clearly erroneous. *Id.;* Ind. Trial Rule 52(A). A finding

---

1. Ind.Code § 13–2–22–15 states in pertinent part, "No person shall construct or install any works of any nature for flood control and no court shall enter the final order or judgment establishing or ordering such works constructed, unless and until the proposed works and the plans and specifications therefor are approved by the commission [DNR]. The interested parties shall file a verified written application with the commission therefor, and the commission

shall consider all the pertinent facts relating to the proposed works which will affect flood control in the state and shall determine whether the proposed works in the plans and specifications will be in aid of and acceptable as a part of, or will adversely affect and interfere with the flood control of the state, and shall enter an order approving or disapproving the application, plans and specifications...."

is clearly erroneous if the record is devoid of facts or inferences to support it. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, *trans. denied.* A judgment is clearly erroneous when unsupported by the findings of fact and conclusions on which the findings are based. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, *trans. denied.*

## I.

■ The McIntyres claim the trial court erred in finding they physically diverted the course and flow of Guthrie Creek. In support, the McIntyres assert their work merely returned the waters of Guthrie Creek to the creek's historic banks. The McIntyres do not indicate the legal significance of returning the creek to its historic banks. Rather, the McIntyres argue that they, as opposed to the Guthries and the Dershems who did nothing to maintain Guthrie Creek, should not be penalized for trying to improve their land by removing the natural effects of time and the seasons on the creek. Notwithstanding the McIntyres' noble intentions, the record reflects the McIntyres' work physically diverted the course and flow of a waterway.

Evidence in the record includes maps and photographs indicating that prior to the work done by the McIntyres, Guthrie Creek was a natural watercourse that curved and meandered through the farmland in Lawrence County toward the White River. Testimony of Robert Bierbaum, a neighbor, indicates the McIntyres created a new creek channel by digging a channel using a large backhoe and bulldozing the dirt from the new creek channel into the natural channel. Bierbaum's testimony also reveals the channel was moved as much as two-hundred feet in some areas. Dean McIntyre testified their work removed many of the curves from the creek and enlarged the size of the creek channel. The record reflects testimony by several witnesses indicating after the McIntyres completed their work Guthrie Creek was a dredged ditch, swift, wide, and straight. The record amply supports the trial court's findings that the McIntyres diverted the flow and course of Guthrie Creek.

## II.

■ The McIntyres next contend the trial court erred in not applying the common enemy doctrine. Under the doctrine, each landowner may deal with the problem of surface water in any manner which best suits his convenience without threat of liability. *Argyelan v. Haviland* (1982), Ind., 435 N.E.2d 973. The McIntyres claim that because their work on Guthrie Creek was an effort to protect their own property from the accumulation of diffuse surface waters, the common enemy doctrine protects them from incurring any liability.

■ The fact that the underlying reasons for the McIntyres' work included alleviating a surface water problem does not automatically invoke the common enemy doctrine. The common enemy doctrine does not protect the owner who alters or interferes with a natural watercourse, even if such alteration is for the purpose of alleviating a surface water problem. *Gasway v. Lalen* (1988), Ind.App., 526 N.E.2d 1199, *reh. denied.* The McIntyres' rerouting of channels and widening of Guthrie Creek resulted in a significant alteration of the natural watercourse and adversely affected other riparian owners.

■ When a landowner's alleviation of a surface water problem has affected a natural watercourse, the common enemy doctrine is applied only when the impact on the natural watercourse is minimal. *Birdwell v. Moore* (1982), Ind.App., 439 N.E.2d 718 (landowner not liable to neighbor where clearing of debris and repairing soil erosion did not increase the amount of water in the watercourse); *Lowe v. Loge Realty Co.* (1966), 138 Ind.App. 434, 214 N.E.2d 400 (upper landowners not liable for diverting surface water into natural watercourse where such diversion did not increase the volume, intensity and force of the discharge through the watercourse); *Smith v. Atkinson* (1962), 133 Ind.App. 430, 180 N.E.2d 542 (upper landowner not liable to lower proprietor for damage caused when evidence showed no water was permitted to flow into the watercourse which did not

flow into it before, nor was water permitted to flow into the watercourse which had previously flowed elsewhere).

Here, the impact of the McIntyres' work on Guthrie Creek was not minimal. Rather, evidence shows the McIntyres' work resulted in widening of the creek channel, straightening of the creek bed, diversion of the creek waters, and an increase in the intensity, volume, and flow of the waters through Guthrie Creek. The findings amply support the trial court's judgment. We find no error.

### III.

The McIntyres next claim the trial court erred in entering judgment in favor of the lower riparian owners because the McIntyres had obtained a permit from the DNR to clear the banks of Guthrie Creek. In essence, the McIntyres claim the Guthries and the Dershems are precluded from recovery based on the DNR permit. We disagree.

In a case tried without a jury, the trial court, as trier of fact, may reconcile, reject or accept, and weigh the evidence. *Northside Sanitary Landfill, Inc. v. Bradley* (1984), Ind.App., 462 N.E.2d 1321. Here, the trial court's special findings of fact do not include a finding as to the DNR permit. Where the trial court's findings are silent regarding facts necessary to sustain certain issues, those facts are regarded as not proved. *Rogers v. City of Evansville* (1982), Ind.App., 437 N.E.2d 1019. In addition, because the court's failure to include a finding as to the DNR permit is of no significance to the judgment rendered, we find no error. *Pepka v. Branch* (1973), 155 Ind.App. 637, 294 N.E.2d 141.

The DNR's enforcement of the Flood Control Act provides for the preservation and improvement of the water resources within the State of Indiana. Ind.Code § 13-2-22-2. The McIntyres do not point to, nor does our research reveal, any authority granting the DNR the authority to limit or preclude civil liability simply by approving action under the Flood Control Act. Because this case concerns the Guth-

ries' and the Dershems' private property rights, as opposed to Flood Control Act violations, the DNR permit provides no grounds for reversal.

Judgment affirmed.

BARTEAU, J., concurs in result with separate opinion.

HOFFMAN, J., concurs.

BARTEAU, Judge, concurring in result.

I concur in result because I do not agree with the majority's reasoning in resolving Issue III, although I reach the same result. The import of the majority opinion is that the DNR permit is of no significance. I hesitate to say that a valid permit is of no significance in a cause of action such as this. However, in this particular case, McIntyre performed work on the creek outside the scope of the DNR permit. For this reason, I believe McIntyre cannot use the DNR permit as a shield from liability.

The DNR permit allowed McIntyre to clear debris from the creek and bank, but specifically prohibited McIntyre from performing inchannel excavation work. The trial court found that McIntyre had diverted and altered the creek, much more than just clearing debris. Because the findings of the trial court support the conclusion that McIntyre exceeded the scope of the DNR permit, the DNR permit cannot shield McIntyre from liability. I would reserve for another case, however, the affect of a valid permit where the work did not exceed the scope of the permit.