**BULLDOG BATTERY CORPORATION, John Dawkins, June Dawkins, John Lunkes, and Norman Benjamin, Appellants–Defendants,**

v.

**PICA INVESTMENTS, INC., Appellee–Plaintiff.**

No. 85A02–0003–CV–141.

Court of Appeals of Indiana.

Oct. 12, 2000.

Rehearing Denied Dec. 22, 2000.

Robert T. Keen, Jr., Larry L. Barnard, Miller, Carson, Boxberger & Murphy, LLP, Fort Wayne, Indiana, Attorneys for Appellants.

Christina D. Arvin, Lowe, Gray, Steele & Darko, LLP, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

Bulldog Battery Corporation, John Dawkins, June Dawkins, John Lunkes, and Norman Benjamin (collectively referred to as "Bulldog Battery") appeal from the trial court's grant of partial summary judgment to Pica Investments, Inc. ("Pica") and from the trial court's denial of its own motion for summary judgment in this action for criminal mischief, trespass, nuisance, and negligence filed by Pica against Bulldog Battery. We reverse in part and affirm in part.

### Issues

Bulldog Battery raises two issues for our review, which we restate as follows:

1. Whether the trial court properly entered summary judgment for Pica on the nonparty defense asserted by Bulldog Battery; and

2. Whether the trial court properly denied Bulldog Battery's motion for

summary judgment based upon the common enemy doctrine.

### Facts and Procedural History

Pica owns property in Wabash, Indiana, on which is situated a building they lease to other businesses. The building has a basement which is accessed by a concrete ramp/loading dock located on the south side of the building. The basement occasionally had water in it due to runoff from the ramp, which water was removed by a sump pump.

Bulldog Battery owns property immediately adjacent to Pica's property. During 1997 and 1998, Bulldog Battery raised the elevation of the property, constructed a warehouse, paved the entire lot with asphalt, and installed a drainage system. The drainage system consisted of downspouts on the warehouse which connect to an eight inch pipe which runs north to south between Bulldog Battery and Pica's buildings. The north terminus of the eight inch pipe connects to the city sewer system. The south terminus of the eight inch pipe connects to a six inch pipe which in turn connects to a catch basin. The parking lot drains into the catch basin. Theoretically, water from the catch basin and from the downspouts is to be carried into the city sewer system. The catch basin also lies between the parties' buildings. Bulldog Battery's building and drainage system were designed by architect Wesley Welch.

After the improvements to Bulldog Battery's property, Pica began to experience additional amounts of water in the basement of its building. The basement sustained flooding of approximately one foot of water in April 1998, three to four feet of water on July 4, 1998, and five to six feet of water on July 7, 1998. On July 28, 1998, the city of Wabash experienced a "one hundred year flood" wherein approximately eight inches of rain fell, the entire city was flooded, and a state of emergency was declared. Following this rainfall, Pica's basement was completely full of water. These episodes of flooding caused substantial damage to the boiler which was kept in the basement and necessitated the installation of an alternative heating system on an upper floor.

Pica then filed a lawsuit against Bulldog Battery alleging criminal mischief, negligence, trespass, and nuisance for the incidents of flooding. In its answer, Bulldog Battery asserted the common enemy doctrine as an affirmative defense and also named architect Welsh as a nonparty defendant. Bulldog Battery thereafter moved for summary judgment against Pica, alleging that the common enemy doctrine barred Pica's claims for damage from the flooding. The next day, Pica filed a motion for partial summary judgment. After a hearing, the trial court entered an order denying Bulldog Battery's motion and granting Pica's motion for partial summary judgment as to the nonparty issue only. Bulldog Battery then properly instituted this interlocutory appeal. Additional facts will be provided as necessary.

### Discussion and Decision

Bulldog Battery contends that the trial court erred in granting Pica's motion for partial summary judgment as to its nonparty defense, and also that the trial court erred in denying its own motion for summary judgment as to the common enemy doctrine.

### I.  Standard of Review

Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Estate of Pflanz v. Davis*, 678 N.E.2d 1148, 1150 (Ind.Ct.App.1997). If the moving

party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Downs v. Panhandle E. Pipeline Co.,* 694 N.E.2d 1198, 1200 (Ind.Ct.App.1998), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *General Accident Ins. Co. of Am. v. Hughes,* 706 N.E.2d 208, 210 (Ind.Ct.App.1999), *trans. denied.*

■ On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Pflanz,* 678 N.E.2d at 1151. We liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Dunifon v. Iovino,* 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *trans. denied.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Jones v. Western Reserve Group,* 699 N.E.2d 711, 714 (Ind.Ct.App. 1998), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Sims v. Barnes,* 689 N.E.2d 734, 735 (Ind. Ct.App.1997), *trans. denied.*

## II. Pica's Motion for Partial Summary Judgment

As an affirmative defense to Pica's complaint, Bulldog Battery alleged that:

any and all damages of [Pica] may have been caused in full or in part by a nonparty, Wesley Welsh, the architect of the Bulldog Battery Warehouse, and that such nonparty fault operates to either bar the claims of [Pica] or to reduce its right to recover from [Bulldog Battery] to the extent of the fault apportioned to the nonparty.

R. 59. Pica's motion for partial summary judgment alleged that Bulldog Battery improperly named Welsh as a nonparty because Welsh was not liable to Pica pursuant to case law holding that an architect owes no duty to third parties not in privity of contract with him unless the design is so negligent as to create a condition imminently dangerous to third parties. *See Hiatt v. Brown,* 422 N.E.2d 736 (Ind.Ct. App.1981). The trial court agreed with Pica and granted its motion for partial summary judgment on this issue. Bulldog Battery believes this to be in error.

### A. The Nonparty Defense

■ Indiana's Comparative Fault Act ("the Act") provides a scheme for allocating liability among persons whose negligence contributed to an injury. Ind.Code §§ 34–51–2–1 to –19. The primary objective of the Act was to abrogate the harshness of the common law rule of contributory negligence under which even a plaintiff who was only slightly negligent was precluded from recovery. *Koziol v. Vojvoda,* 662 N.E.2d 985, 988 (Ind.Ct.App.1996). Under the Act, the total fault for an accident is apportioned between the plaintiff, defendant, and any other person who is properly named a "nonparty." Ind.Code § 34–51–2–7(b)(1). Thus, a named defendant may assert, within a limited time, a "nonparty defense" seeking to attribute fault to a nonparty rather than the defendant. Ind.Code § 34–51–2–14, –16. Until 1995, a "nonparty" was defined as *"a person who is, or may be liable to the claimant* in part or in whole for the damages claimed but who has not been joined in the action as a defendant by the claimant."

Ind.Code § 34–4–33–2(a) (emphasis added). However, the legislature has amended the definition so that a "nonparty" is now defined as *"a person who caused or contributed to cause the alleged injury,* death, or damage to property but who has not been joined in the action as a defendant." Ind.Code § 34–6–2–88 (emphasis added). The burden of pleading and proving a nonparty defense is upon the defendant. Ind.Code § 34–51–2–15.

### B. Bulldog Battery's Assertion of the Nonparty Defense

Bulldog Battery and Pica disagree on the propriety of the nonparty defense in this case. Bulldog Battery correctly notes that the Act no longer requires that the nonparty be liable to the plaintiff, but only that he or she have caused or contributed to the cause of the plaintiff's injury. Because the designated evidence showed the design of the drainage system was improper and that Welsh was responsible for the design of the drainage system, Bulldog Battery contends that Welsh is clearly a person who caused or contributed to the cause of the flooding on Pica's property and thus, was properly named as a nonparty.

■ Pica argues that "[i]n naming a person as a nonparty, it is implicit that some legal duty must exist as to the plaintiff." Brief of Appellee at 13. We must disagree. Pica's arguments rest on the premise that, despite the legislature's amendment of the definition of a "nonparty," the nonparty must still be liable to the plaintiff for the plaintiff's damages. However, the definition of a "nonparty" was amended to specifically exclude the concept of liability and focus instead on causation. A fundamental rule of statutory construction is that "an amendment changing a prior statute indicates a legislative intention that the meaning of the statute has changed." *United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 (Ind.1999). "Such an amendment raises the presumption that the legislature intended to change the law unless it clearly appears that the amendment was passed in order to express the original intent more clearly." *Id.* Under Pica's proposed interpretation, the amendment to the statutory definition of a "nonparty" would be meaningless because the concept of liability would still be implicitly included in the definition.

■ In this case, we believe the amendment means that whether or not the nonparty may be liable to the plaintiff is *no longer* a consideration. We acknowledge Pica's concerns that naming as a nonparty a person who is not liable to the plaintiff could deprive Pica of relief for some or all of its damages. However, as Pica itself notes, the nonparty defense "prevents defendants from bearing the 'financial burden of governmental immunities and other factors that might prevent the naming of a person or entity at fault as a defendant.'" Brief of Appellee at 14 (quoting Andrew Wirick and Ann Marie Waldron Piscione, *Tort Law Reform (?) and Other Developments in Indiana Tort Law,* 29 Ind. L.Rev. 1097, 1101 (1996) (emphasis omitted)). In *City of Vincennes v. Reuhl,* 672 N.E.2d 495 (Ind.Ct.App.1996), *trans. denied,* this court stated that although the Act is not applicable to a governmental entity, the jury is nonetheless permitted to consider the nonparty governmental entity's negligence in allocating fault. *Id.* at 498. Thus, it is apparent that the nonparty defense may be used in instances in which the nonparty could not be liable to the plaintiff, despite having contributed to the injury. Just as it may be considered "unfair" to deprive the plaintiff of recovering the full amount of his or her damages due to the allocation of fault to a nonparty, it would be "unfair" to require the defendant alone to bear the cost of the plaintiff's damages if he or she was not solely responsible for the injury. The nonparty defense is not limited to instances where the named nonparty is or may be liable to the plaintiff.

■ As Bulldog Battery's designated evidence demonstrated that Welsh was a person who may have caused or contributed to cause Pica's property damage, the nonparty defense was properly asserted, and the trial court erred as a matter of law in granting partial summary judgment to Pica on this issue. We do note, however, that it remains Pica's burden to prove at trial that Bulldog Battery is solely responsible for its damages. Moreover, it is then Bulldog Battery's burden to prove at trial that Welsh did in fact cause or contribute to cause the drainage problem which resulted in damage to Pica's property for purposes of allocating fault.

### III. Bulldog Battery's Motion for Summary Judgment

Bulldog Battery filed its own motion for summary judgment, alleging that Pica's claims are barred by the common enemy doctrine. The trial court denied the motion.

### A. The Common Enemy Doctrine

■ In reasserting that Indiana follows the common enemy doctrine, our supreme court described the doctrine as follows:

> In its most simplistic and pure form the rule known as the "common enemy doctrine," declares that surface water which does not flow in defined channels is a common enemy and that each landowner may deal with it in such manner as best suits his own convenience. Such sanctioned dealings include walling it out, walling it in and diverting or accelerating its flow by any means whatever.

*Argyelan v. Haviland,* 435 N.E.2d 973, 975 (Ind.1982). Thus, under the common enemy doctrine of water diversion, it is not unlawful for a landowner to improve his land in such a way as to accelerate or increase the flow of surface water by limiting or eliminating ground absorption or changing the grade of the land even where his land is so situated to the land of an adjoining landowner that the improvement will cause water either to stand in unusual quantities on the adjacent land or to pass into or over the adjacent land in greater quantities or in other directions than the waters were accustomed to flow. *Trowbridge v. Torabi,* 693 N.E.2d 622, 626 (Ind. Ct.App.1998), *trans. denied.* The common enemy doctrine applies regardless of the form of action brought by the plaintiff, that is, regardless of whether the plaintiff asserts his claims as an action for negligence, trespass, or nuisance. *Id.; Pickett v. Brown,* 569 N.E.2d 706, 708 (Ind.Ct. App.1991), *trans. denied.* The only limitation on the common enemy doctrine that has thus far been recognized is that "one may not collect or concentrate surface water and cast it, in a body, upon his neighbor." *Argyelan,* 435 N.E.2d at 976.

■ "Surface water" has been defined as "[w]ater from falling rains or melting snows which is diffused over the surface of the ground or which temporarily flows upon or over the surface as the natural elevations and depressions of the land may guide it but which has no definite banks or channel...." *Kramer v. Rager,* 441 N.E.2d 700, 705 (Ind.Ct.App.1982) (citations omitted) (quoting *Capes v. Barger,* 123 Ind.App. 212, 214–15, 109 N.E.2d 725, 726 (1953)). Moreover, "[i]f the natural depressions and elevations of the land form a way for water but such way has no well defined banks or channel and carries no water except that which drains into it from adjoining lands ..., then such way is not a natural water course but a mere surface drain...." *Id.* The common enemy doctrine protects the landowner who alters his land in such a way as to affect surface water, but does not apply to protect the landowner who alters or interferes with a natural watercourse unless the impact on the natural watercourse is minimal. *McIntyre v. Guthrie,* 596 N.E.2d 979, 982 (Ind.Ct.App.1992), *trans. denied.* This is so even if the natural watercourse is altered for the purpose of alleviating a surface water problem. *Id.*

B. Application of the Common Enemy Doctrine to Preclude Pica's Claims

Bulldog Battery contends that the common enemy doctrine bars all of Pica's claims because the property damage alleged was caused by surface water. Pica claims that a genuine issue of material fact exists as to whether the "collect and cast" limitation to the doctrine applies in this case.

In *Argyelan,* the defendants erected a commercial building upon their lot, which was adjacent to the plaintiff's residential lot. As part of the improvement to the lot, the defendants also erected downspouts directed toward the property line and paved a substantial portion of the lot. Following completion of these improvements, plaintiffs complained that surface water was draining from the defendants' property and pooling on their property, causing damage. The defendants then erected a six-inch curb or retaining wall along the property line. In a sustained rain, water would accumulate behind the curb and eventually flow over it onto plaintiffs' property. The supreme court held that the defendants were not liable to the plaintiffs for damage caused by the overflowing surface water pursuant to the common enemy doctrine because there was no showing that the defendants had, by artificial means, conducted the water in unusual quantities by new channels onto particular parts of the plaintiffs' land. 435 N.E.2d at 976. In so holding, the majority of the court stated that the fact that "water was once impounded or channeled [via downspouts] can be of no moment if it is diffused to a general flow at the point of entering the adjoining land." *Id.* Bulldog Battery argues that this is analogous to the situation in this case, in which water was collected via its drainage system, but diffused to a general flow and commingled with surface water from surrounding properties and Pica's premises before flowing into Pica's basement.

Pica cites *Gene B. Glick Co., Inc. v. Marion Constr. Corp.,* 165 Ind.App. 72, 331 N.E.2d 26 (1975), as being more closely analogous to the facts of this case. In that case, the defendant constructed a drainage system which vented at the corner of its property causing water to flow onto the neighboring property. Because the water was collected and transported via the drainage system to discharge in a concentrated flow on the neighboring land where no natural watercourse existed, this court held that the common enemy doctrine did not apply. *Id.* at 32.

Whether surface water is collected and cast upon neighboring land as a body or collected but diffused before entering neighboring property will be largely a question of fact. The evidence designated to the trial court on summary judgment indicates that Bulldog Battery's drainage system directs water to the catch basin, where it is collected. Ideally, it would then be routed into the city's drainage system. However, Pica's president personally witnessed water "shooting out" of the catch basin and downspouts, and observed water running in channels off Bulldog Battery's paved parking lot and onto Pica's property. Thus, we believe there is a genuine issue of material fact for the trier of fact regarding whether Bulldog Battery's improvements to its land merely altered the flow of the surface water resulting in a general flow of water onto Pica's land or collected it by artificial means and cast it in a body upon Pica's land. The trial court properly denied Bulldog Battery's motion for summary judgment.

### Conclusion

Bulldog Battery properly named the architect of its improvements as a nonparty to this action, and the trial court erred in granting partial summary judgment to Pica on this issue. Moreover, there remains an issue of fact regarding the applicability of the common enemy doctrine to Pica's claims, and therefore, the trial court properly denied Bulldog Battery's motion for summary judgment. Accordingly, that

part of the trial court's order granting Pica's motion for partial summary judgment is reversed. The remainder of the trial court's order is affirmed in its entirety.

Reversed in part, affirmed in part.

MATHIAS, J., and MATTINGLY, J., concur.