# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JAMES R. FISHER**
**DEBRA H. MILLER**
Miller & Fisher, LLC
Indianapolis, Indiana

**ROGER L. PARDIECK**
**KAREN M. DAVIS**
**SUSAN E. BOATRIGHT**
The Pardieck Law Firm
Seymour, Indiana

ATTORNEYS FOR AMICUS:
Indiana Trial Lawyers Association

**WILLIAM E. WININGHAM**
**JOHN G. SHUBAT**
Wilson Kehoe & Winingham LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DANFORD R. DUE**
**SCOTT E. ANDRES**
Due Doyle Fanning, LLP
Indianapolis, Indiana



ATTORNEYS FOR AMICUS:
Defense Trial Counsel of Indiana

**JULIA B. GELINAS**
**LUCY R. DOLLENS**
Frost Brown Todd LLC
Indianapolis, Indiana

**DONALD B. KITE, SR.**
Gonzalez, Saggio & Harlan LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARY E. SANTELLI, as Administrator of the Estate of JAMES F. SANTELLI, | ) | |
| | ) | |
| Appellant - Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1011-CT-704 |
| | ) | |
| ABU M. RAHMATULLAH, individually, and d/b/a SUPER 8 MOTEL, | ) | |
| | ) | |
| Appellee - Defendant. | ) | |

**March 29, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

In this consolidated appeal, Mary Elizabeth Santelli, as the administrator of the Estate

of James F. Santelli (the Estate), appeals from the trial court's findings of fact, conclusions

thereon, and order on the Estate's motion to correct error and motion for a new trial, as well

as from certain rulings made during the jury trial. Abu Rahmatullah (Rahmatullah),

individually and d/b/a Super 8 Motel, also appeals from the trial court's order. The following

issues are presented for our review:

1. Can we address on appeal the merits of a motion to correct error that was deemed denied, but then belatedly granted?

2. Does Indiana's Comparative Fault Act (the Act)[1] abrogate the common law "very duty" doctrine?

3. Did the trial court err by allowing the jury to allocate fault to Santelli?

4. Did the trial court err by excluding evidence of a prior shootout with police at Rahmatullah's hotel?

We reverse and remand.[2]

On October 16 or 17, 2005, Santelli was murdered in the course of a robbery at a

---

[1]  Ind. Code Ann. § 34-51-2-1 *et. seq.* (West, Westlaw current through 2011 1st Reg. Sess.).

[2]  Oral argument was held on February 9, 2012 in the Indiana Court of Appeals courtroom in Indianapolis, Indiana. We commend counsel for the quality of their written and oral advocacy.

motel owned by Rahmatullah. Santelli was a paying guest of the motel, living there while working on a construction project. Joseph Pryor, who had previously been employed at the motel as a general maintenance man, obtained a master keycard to the motel during his brief employment there and kept the keycard after he walked off the job. Rahmatullah's manager at the motel did not perform a criminal background check on Pryor before hiring him. Pryor had an outstanding warrant for his arrest issued on September 21, 2005, for a probation violation. Somehow, Pryor gained entry to Santelli's room and murdered him. Pryor confessed to robbing and killing Santelli and was sentenced to 85 years in prison for those crimes.

On April 5, 2007, the Estate filed a complaint against Rahmatullah arguing that he had breached his duty of care to Santelli by hiring Pryor, giving Pryor a master keycard to the motel without running a criminal history check, and failing to provide proper security in the motel. Rahmatullah asserted a non-party defense, naming Pryor as a non-party defendant.

At the conclusion of the jury trial, the jury calculated the Estate's damages to be $2,070,000.00. The jury allocated fault among the parties as follows: 1) One percent to Santelli; 2) two percent to Rahmatullah; and 3) ninety-seven percent to Pryor. Based upon the allocation of fault percentages, the jury entered a verdict in favor of the Estate in the amount of $41,400.00, or 2 percent of the $2,070,000.00 damages sustained by the beneficiary of the Estate.

The Estate filed a motion to correct error and request for a new trial arguing that the trial court erred by instructing the jury to allocate fault among Santelli, Rahmatullah, and Pryor, without also instructing the jury on the very duty doctrine. The hearing on the Estate's

3

motion was held on September 27, 2010. At the conclusion of the hearing, the trial court asked the parties to submit proposed findings of fact and conclusions thereon and scheduled an October 25, 2010 deadline for filing them. That filing deadline was within thirty days of the hearing date, but left only two days for the trial court to issue its ruling on the motion within the time provided for by rule. *See* Ind. Trial Rule 53.3. At the conclusion of the hearing the following exchange took place:

| THE COURT: | If you would . . . really to be honest with you, I think that a simple order like Mr. Due prepared probably is going to require findings of facts and conclusion because, regardless of the outcome, it's going to be appealed. And if I don't send findings of facts and conclusions, then the Court of Appeals will say that in the opinion that there aren't any and it's much more . . . it's much easier for them to deal with it if there are findings of facts and conclusions. |
|---|---|
| MR. FISHER: | May we submit some post-hearing, Your Honor? |
| THE COURT: | I'll give you plenty of time to do it. |
| MR. DUE: | In response to that, Your Honor, because of the way these issues have been raised and in your rulings throughout, I think that there's plenty of information in the record. |
| THE COURT: | For me to comb through the record you mean? |
| MR. DUE: | Well, no, no. No, no, no. I don't think that the Court of Appeals would require . . . |
| THE COURT: | Oh. |
| MR. DUE: | . . . findings or conclusions in a case like this. |

\* \* \*

THE COURT: . . . So this is September the 27th. A couple of weeks do

4

you think? Mr. Due, I know you have a very busy schedule.

MR. DUE: Yeah, that would be alright.

THE COURT: Alright. How about . . . let's make it the 20th. Yeah. Let's make it the 20th of October because I have another jury starting tomorrow. I won't have time to look at it this week. I mean, even if I got them I wouldn't be able to do much with it. So that gives you plenty of time and give[s] me some time to review your findings of facts and conclusions once I get them. The 20th is a Wednesday. Is that not a good date for you Mr. Pardieck?

MR. PARDIECK: Your Honor, could that be moved out to the following Monday. We have a jury trial starting on the 17th of October.

THE COURT: Okay. The 25th?

MR. PARDIECK: The 25th?

THE COURT: The 25th of October?

MR. PARDIECK: Yes, the 25th. That would be appreciated.

THE COURT: That's fine with me. Alright. Then the findings of facts and conclusions are due on the 25th and then the order will be out just as soon as I can get to it after that.

*Motion to Correct Error Hearing Transcript* at 24-26. The parties submitted proposed findings of fact and conclusions thereon, and the trial court issued its order on November 5, 2010. In its order, the trial court granted the Estate's motion in part, setting aside the jury verdict with respect to the allocation of fault. Specifically, the trial court found that the jury's allocation of non-party fault at 97%, in spite of Rahmatullah's negligent conduct, effectively eliminated Rahmatullah's duty to protect customers, and thus, was against the

5

weight of the evidence. The motion to correct error was denied in all other respects.

The Estate filed its notice of appeal from the trial court's order on November 19, 2010, and Rahmatullah filed his notice of appeal on December 6, 2010. The Estate asserted in its notice of appeal that it was appealing from the jury verdict and from the trial court's deemed denial of the Estate's motion to correct error, and from the belated findings and ruling issued by the trial court on the motion to correct error on November 5, 2010. Rahmatullah asserted in his notice of appeal that he was appealing the trial court's belated order granting the Estate's motion to correct error in part, as it was untimely. Rahmatullah later filed a motion to consolidate both appeals, which was granted by this court.

The Indiana Trial Lawyers' Association and Defense Trial Counsel of Indiana were granted leave to file amicus briefs. We now consider this consolidated appeal and the motions filed in this matter.[3]

1.

Rahmatullah argues that the Estate's motion to correct error was deemed denied when the trial court failed to rule upon the motion within thirty days after the hearing on the motion. Rahmatullah contends that because the motion was deemed denied, the trial court's subsequent order ruling on the motion to correct error is void. By timely appealing that belated order and enforcing the deemed denial, the argument follows, the belated order granting the motion is voidable. Rahmatullah seeks to enforce the deemed denial.

T. R. 53.3 provides in pertinent part as follows:

**(A) Time limitation for ruling on motion to correct error.** In the event a

---

[3] In a separate order, we deny Rahmatullah's motion to strike the Estate's cross-cross-appeal reply brief.

court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.

**(B) Exceptions.** The time limitation for ruling on a motion to correct error established under Section (A) of this rule shall not apply where:

*＊＊＊*

> (2) The parties who have appeared or their counsel stipulate or agree on record that the time limitation for ruling set forth under Section (A) shall not apply; or

> (3) The time limitation for ruling has been extended by Section (D) of this rule.

*＊＊＊*

**(D) Extension of time for ruling.** The Judge before whom a Motion to Correct Error is pending may extend the time limitation for ruling for a period of no more than thirty (30) days by filing an entry in the cause advising all parties of the extension. Such entry must be in writing, must be noted in the Chronological Case Summary before the expiration of the initial time period for ruling set forth under Section (A), and must be served on all parties. Additional extension of time may be granted only upon application to the Supreme Court as set forth in Trial Rule 53.1(D).

T.R. 53.3(A) explicitly states that if the trial court fails to rule within thirty days of the hearing on the motion to correct error, the motion is deemed denied. Case law interpreting T.R. 53.3(A), however, changed the way courts on review treat a belated grant of a motion to correct error that by operation of the rule was deemed denied. A trio of cases that are relevant here begin with the Supreme Court's opinion in *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d 285 (Ind. 2000), then its opinion in *Garrison v. Metcalf*, 849 N.E.2d 1114 (Ind. 2006), and conclude with its opinion in *HomEq Servicing Corp. v. Baker*, 883 N.E.2d 95

7

(Ind. 2008). These cases establish the framework for the determination of whether we may review the merits of the motion to correct error once it is belatedly granted.

We have previously stated that "when presented with the question of the validity of a belated grant of a motion to correct error . . . [o]ur inquiry involves . . . two steps." *Wurster Const. Co., Inc. v. Essex Ins. Co.*, 918 N.E.2d 666, 672 (Ind. Ct. App. 2009). First, we determine whether the belated grant is void. *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d 285. If the belated grant is void, then we address whether the issues raised by the movant in the motion to correct error can again be raised on cross-appeal. *HomeEq Servicing Corp. v. Baker*, 883 N.E.2d 95. Prior to 2000, we held that once a motion to correct error was deemed denied the trial court's power to rule on the motion was extinguished and its later ruling was a nullity. *Moran v. Cook*, 644 N.E.2d 179 (Ind. Ct. App. 1994).

In *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d 285, the plaintiff filed a motion to correct error, a hearing was held, and the motion to correct error was deemed denied. The plaintiff filed a notice of appeal challenging the deemed denial of the motion to correct error. The trial court belatedly granted the motion to correct error. The defendant filed a notice of appeal challenging the trial court's belated grant, and the plaintiff cross-appealed on the merits of the motion.

The Supreme Court held that if the proponent of the motion appeals and the trial court then belatedly grants the motion to correct error, the opponent of the motion can (1) agree to the belated ruling, or (2) appeal the belated grant. The proponent of the motion to correct error in *Cavinder* could assert the merits of the motion to correct error as a cross-appeal issue because he had timely appealed the deemed denial.

8

Footnote 4 of the opinion stated that "if the trial court belatedly grants a motion to correct error before the party filing the motion to correct error initiates an appeal but during the time period within which such party is entitled to appeal from the deemed denial, the party may assert as cross-error the issues presented in its 'deemed denied' motion to correct error." *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d at 289 n.4.

In the next case, *Garrison v. Metcalf*, the defendant filed a motion to correct error and a hearing was held. The motion was deemed denied, but no appeal was initiated prior to the trial court's belated grant of the motion within the thirty-day period for appealing the deemed denial. The plaintiff filed a notice of appeal attempting to enforce the deemed denial, but arguing in the alternative that the belated grant was wrongly granted on the merits. The Supreme Court held that the defendant could not argue the merits of the motion to correct error because the defendant did not raise the issue on cross-appeal when filing its brief in the appeal initiated by the plaintiff.

In *HomEq Servicing Corp. v. Baker*, the defendant filed a motion to correct error and a hearing was held on that motion. The motion was deemed denied. The trial court belatedly granted the motion within the thirty-day period for an appeal of the deemed denial. The plaintiff filed a notice of appeal seeking to enforce the deemed denial. The defendant cross-appealed on the merits of the motion to correct error. The Supreme Court allowed the consideration of the cross-appeal on the merits of the motion to correct error, applying the footnote 4 exception from *Cavinder*.

Here, we have the timely initiation of two appeals, one by each party, to enforce the deemed denial, and for consideration of the merits of the deemed denied motion to correct

9

error and/or validation of the order belatedly granting the motion to correct error in part. With respect to Rahmatullah's attempt to seek to enforce the deemed denial, a good argument could be made that the parties acquiesced to an extension of time in which the trial court could rule on the motion after receiving proposed findings of fact and conclusions from the parties. We believe that is precisely what happened here. At the end of the discussion between the parties and the trial court regarding the selection of the deadline for the submission of the proposed findings of fact and conclusions of law, the trial court told the parties that an order would follow as soon thereafter as possible. Neither party objected to the trial court's proposal, orally or in writing, and reasonable people could interpret the parties' silence at the hearing as a tacit agreement on the record that the time limitations of T.R. 53.3 would not apply.

Even though we believe that the trial court's order could be validated and enforced as discussed above, we will address the merits of the belatedly granted motion to correct error, presuming that it was deemed denied by operation of the rule, because the order was timely appealed. The footnote 4 exception of *Cavinder* dictates that result here. The trial court belatedly granted the Estate's motion to correct error before the Estate timely initiated an appeal, but during the time period within which the Estate was entitled to appeal from the deemed denial.

2.

The Estate argues that Rahmatullah, as owner of the motel, owed a duty to Santelli to exercise reasonable care to protect him, a business invitee, from criminal assault. In order to prove negligence, a plaintiff must establish (1) the existence of a duty owed by the defendant

10

to the plaintiff, (2) the defendant's failure to conform his conduct to the requisite standard of care required by the relationship, and (3) injury to the plaintiff proximately resulting from that failure. *Rubin v. Johnson*, 550 N.E.2d 324 (Ind. Ct. App. 1990). Whether a duty exists is a question of law. *Id.* Further, a duty may derive from common-law principles of negligence or from the violation of a statute. *Id.*

"Landowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1052 (Ind. 2003). The Supreme Court and this court have applied the rule set forth in Restatement (Second) of Torts (1965) §344, which provides as follows:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
> (a)  Discover that such acts are being done or are likely to be done, or
> (b)  Give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it.

Comment f to this section further provides:

> *Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

11

*See e.g.*, *Muex v. Hindel Bowling Lanes, Inc.*, 596 N.E.2d 263 (Ind. 1992); *Bearman v. Univ. of Notre Dame*, 453 N.E.2d 1196 (Ind. Ct. App. 1983).

In *Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 973 (Ind. 1999), our Supreme Court examined several tests[4] in reaching its determination that the "totality of the circumstances" test should be used to decide whether a criminal assault on the premises was foreseeable. *See also, Vernon v. The Kroger Co.*, 712 N.E.2d 976 (Ind. 1999) (using totality of the circumstances test to determine if owner of store owed duty to customer to take reasonable care to protect against a third-party criminal attack in the store parking lot); *L.W. v. Western Golf Assoc.*, 712 N.E.2d 983 (Ind. 1999) (using totality of circumstances test to determine if owner of student housing owed duty to protect student against criminal acts of third party). In later cases, our Supreme Court has continued to follow this test and reiterated that "when the landowner is in a position to take reasonable precautions to protect his guest from a foreseeable criminal act, courts should not hesitate to hold that a duty exists." *Paragon Family Rest. v. Bartolini*, 799 N.E.2d at 1053; *The Kroger Co. v. Plonski*, 930 N.E.2d 1 (Ind. 2010) (store owner owed duty to protect customer from criminal acts of all third parties, not just other patrons or guests, but issue of fact whether criminal activity was foreseeable).

The Estate argues that the trial court erred by denying its motion for partial summary

---

[4] These tests include (1) the specific harm test, whereby the owner owes no duty unless he knew or should have known that the specific harm was occurring or was about to occur; (2) the prior similar incidents test, whereby the owner may owe a duty of reasonable care if there is evidence of prior similar incidents of crime on or near the owner's property such that the crime in question was foreseeable; (3) the balancing test, whereby the degree of foreseeability of harm is balanced against the burden of the duty imposed; and (4) the totality of the circumstances test, whereby the court considers all of the circumstances surrounding an event,

judgment, tendered instruction on the very duty doctrine, and motion to correct error, each of which advanced the argument that the Act did not abrogate the common-law very duty doctrine. Rahmatullah, on the other hand, argues to the contrary, and thus, that the trial court did not err when instructing the jury. Amicus briefs have been filed in support of both sides. The issue we must address is how non-party fault should be allocated when the non-party committed a criminal act causing the injury.

> Restatement (Second) of Torts, §449 sets forth the very duty doctrine as follows:
>
> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

Indiana courts previously have applied the very duty doctrine as the law in Indiana. For example, in *Rubin v. Johnson*, 550 N.E.2d 324 (Ind. Ct. App. 1990), a panel of this court cited an opinion from the Florida Court of Appeals, *K-Mart Enters. v. Keller*, 439 So.2d 283 (Fla. App. 1983), to support the decision reached by use of the doctrine. In *Rubin*, the owners of a pawn shop, the named defendants in the case, sought to avoid liability for the death of Johnson, an individual shot to death by a patron to whom they had sold a firearm. Although the customer had previously exhibited unusual behavior and purchased unusual items at the pawn shop, and had stated an unusual and inappropriate use of the firearm, the owners of the pawn shop sold the firearm to him nonetheless. The owners argued that the patron's firing of the gun was an intervening criminal act and the proximate cause of Johnson's death, thus relieving them of liability. We applied the doctrine and found that the

---

including the nature, condition, and location of the land, as well as prior similar incidents to determine

13

criminal use of the firearm sold to one of unsound mind was the "very risk" sought to be avoided by the statutory duty not to sell a handgun to a person believed to be mentally incompetent. *Rubin v. Johnson*, 550 N.E.2d at 333. This court held that the criminal use of the firearm was foreseeable, and thus could not bar recovery from the seller under the intervening act doctrine.

In *Sauders v. The Cnty. of Steuben*, 693 N.E.2d 16 (Ind. 1998), the estate of a jail inmate brought a wrongful death action under the Indiana Tort Claims Act against the county and its employees. The inmate committed suicide at the jail after his arrest. In general, under the Indiana Tort Claims Act, both contributory negligence and incurred risk bar a plaintiff's claim for recovery against government actors. Our Supreme Court, acknowledging a duty set forth in Restatement (Second) of Torts §314A, cmt. d (1965) (duty to protect against unreasonable risk of harm, including self-inflicted harm), held that the act of suicide could not constitute contributory negligence or incurred risk in a custodial suicide case, and that the trial court's instructions to the jury on those doctrines was reversible error. Application of the doctrines in that case would eliminate the duty to protect an inmate from harm. "A duty to prevent someone from acting in a particular way logically cannot be defeated by the very action sought to be avoided." *Sauders v. The Cnty. of Steuben*, 693 N.E.2d at 19 (quoting *Myers v. Cnty. of Lake, Ind.*, 30 F.3d 847, 853 (7th Cir. 1994)).

"It is well settled that the legislature does not intend by a statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication." *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.*, 578 N.E.2d 669, 673

---

whether a criminal act was foreseeable.

14

(Ind. 1991) (citing *N. Ind. Pub. Serv. Co. v. Citizens Action Coal.*, 548 N.E.2d 153 (Ind. 1989)). Because comparative fault statutes are in derogation of existing common law, the Act must be strictly construed. *Id.*

The question here is whether the Act has abrogated the common-law very duty doctrine. The Estate tendered an instruction on the doctrine, which the trial court refused. In spite of the lack of instruction on the issue, the Estate, nonetheless, in closing argument presented the very duty doctrine to the jury. We have found that other common law doctrines have survived the enactment of the Act. *See Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104 (Ind. 2002) (doctrine of superseding or intervening cause not abrogated by the Act, but was subsumed by the Act); *Compton v. Pletch*, 561 N.E.2d 803 (Ind. Ct. App. 1990) (sudden emergency doctrine not abrogated by the Act). We conclude that the very duty doctrine survives as well, and was not abrogated by the Act.

The Act "governs any action based on fault that is brought to recover damages for injury or death to a person or harm to property" with certain exceptions not applicable here. I.C. § 34-51-2-1.

> Under the Act, proportional liability is determined by the fact-finder allocating a percentage of "fault" to the claimant, the defendant(s), and any "nonparty." In assessing percentage of fault, the jury shall consider the fault of all persons who caused or contributed to cause the alleged injury, death, or damage to property . . . . If the claimant's fault is fifty percent or less, the fact-finder determines a verdict by multiplying the percentage of fault of each defendant by the total amount of the claimant's damages. "Fault" is specifically defined for the purposes of the Act to include: any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others.

*Kocher v. Getz*, 824 N.E.2d 671, 673 (Ind. 2005) (internal citations omitted).

15

Further, the Act allows a defendant to assert a nonparty defense. I.C. § 34-51-2-14 (West Westlaw current through 2011 1st Reg. Sess.). The Act also provides a scheme for allocating liability among persons whose negligence contributed to an injury. *Bulldog Battery Corp. v. Pica Invs., Inc.*, 736 N.E.2d 333 (Ind. Ct. App. 2000). While the primary objective of the Act is to eliminate the harshness of the application of contributory negligence, which precluded recovery for a plaintiff who was only slightly negligent, the Act provides for the allocation of fault among the plaintiff, defendant, and any other properly named non-party defendant. *Id*. A nonparty is defined by statute as "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant." Ind. Code Ann. § 34-6-2-88 (West, Westlaw current through 2011 1st Reg. Sess.).

Clearly, the Act allows for recovery from criminal defendants and our Supreme Court has approved the allocation of fault to criminal defendants. I.C. § 34-51-2-10 (West, Westlaw current through 2011 1st Reg. Sess.); *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048. This does not, however, support the inference that the very duty doctrine has been abrogated by the Act, and we conclude that in fact, it has not been abrogated by the Act. In the new trial on the issue of the allocation of fault, the trial court should instruct the jury on the very duty doctrine.

Both our Supreme Court and this court have previously relied on the Restatement (Second) of Torts in resolving premises liability questions. *See Burrell v. Meads,* 569 N.E.2d 637 (Ind. 1991) (incorporating Restatement (Second) of Torts § 332 in adopting the "invitation test" for use in determining who qualifies as an invitee in premises liability

16

actions); *see also Frye v. Rumbletown Free Methodist Church,* 657 N.E.2d 745 (Ind. Ct.

App. 1995) (adopting Restatement (Second) of Torts § 330 in determining that Indiana

recognizes the privilege to enter another's land implied by custom). The Estate argues that

we should adopt Restatement (Third) of Torts § 14 (2000), and we do so for the reasons we

discuss below.

Section 14, entitled "Tortfeasor Liable For Failure To Protect The Plaintiff From The

Specific Risk Of An Intentional Tort", provides as follows:

> A person who is liable to another based on a failure to protect the other from
> the specific risk of an intentional tort is jointly and severally liable for the
> share of comparative responsibility assigned to the intentional tortfeasor in
> addition to the share of comparative responsibility assigned to the person.

The Commentary and Illustrations following the language of Section 14 are worth

reproducing here, in pertinent part.

**Comment:**

> *a. Scope.* The rule in this Section applies only when a person is negligent
> *because* of the failure to take reasonable precautions to protect against the
> specific risk created by an intentional tortfeasor. Negligence (or strict liability)
> is determined in accordance with governing rules about tortious conduct, but
> this Section only applies if the risk that makes the tortfeasor negligent or
> strictly liable is the failure to take precautions against an intentional tort. When
> a person's unrelated tortious conduct and an intentional tortfeasor's acts
> concur to cause harm to another, the rules of joint and several liability
> provided in the applicable Track (A-E) govern. For reasons explained in
> Comment *b*, this Section is limited to instances in which the person is liable
> because of the risk of an intentional tort and does not extend to duties to
> protect against another's negligence. This Section does not determine when a
> party who fails to protect against the risk of an intentional tort is liable for
> failing to do so. Rather, the rule in this Section applies only when the
> governing law provides for such liability.

**Illustration:**

1. A is a guest at a hotel operated by B. B neglects to provide adequate door locks on A's room, as a result of which C, an intruder, gains access to A's room, assaults A, and steals A's property. B is liable for the shares of comparative responsibility assigned both to B and to C, because the risk that made B's conduct negligent was specifically the risk that someone would assault A and steal A's property. C is jointly and severally liable for all of A's damages. See § 12 (intentional tortfeasors). B's right to contribution from C is governed by § 23, Comment *e*. C's right to contribution from B is governed by § 23 and Comment *l*.

The rule stated in this Section includes tortious acts of commission as well as omission. Thus, if in Illustration 1, B had provided adequate door locks, but negligently repaired the lock on A's room, thereby enabling C to gain access to A's room, B would also be liable for C's share of comparative responsibility.

＊ ＊ ＊

*b. Rationale.* The modification of joint and several liability and the application of comparative responsibility to intentional tortfeasors create a difficult problem. When a person is injured by an intentional tort and another person negligently failed to protect against the risk of an intentional tort, the great culpability of the intentional tortfeasor may lead a factfinder to assign the bulk of responsibility for the harm to the intentional tortfeasor, who often will be insolvent. This would leave the person who negligently failed to protect the plaintiff with little liability and the injured plaintiff with little or no compensation for the harm. Yet when the risk of an intentional tort is the specific risk that required the negligent tortfeasor to protect the injured person, that result significantly diminishes the purpose for requiring a person to take precautions against this risk.

A number of courts therefore have concluded that persons who negligently fail to protect against the specific risk of an intentional tort should bear the risk that the intentional tortfeasor is insolvent. The rule stated in this Section similarly makes such persons liable for the intentional tortfeasor's share of comparative responsibility. The negligent person may assert a contribution claim against the intentional tortfeasor, as provided in § 23, Comment *e*.

The method that most courts have employed to impose the risk of insolvency of an intentional tortfeasor on a person who negligently fails to protect the plaintiff is to refuse to permit assignment of a share of comparative

18

responsibility to the intentional tortfeasor in a suit against the negligent party. While this method accomplishes the same goal, it is a less desirable means than the rule provided in this Section, which makes the negligent party liable for both that party's share as well as the intentional tortfeasor's share of comparative responsibility. Including intentional tortfeasors in the assignment of comparative responsibility provides a system for resolving all claims in a single proceeding, including any contribution or indemnity claims that may exist among negligent, strictly liable, and intentional tortfeasors. See § 1, Comment *c*. Including intentional tortfeasors also permits appropriate crediting of the judgment in the case of partial settlements. See § 16. In addition, coupling a rule permitting assignment of comparative responsibility to intentional tortfeasors with the rule provided in this Section avoids the unfairness of holding a party whose negligence is wholly unrelated to the intentional tortfeasor liable for the share of comparative responsibility assigned to the intentional tortfeasor. See Illustration 2.

Restatement (Third) of Torts (2000) §14.

In the present case, Santelli's injury, i.e., his death, arose from both the intentional criminal act of Pryor, and the negligent actions of Rahmatullah. Of the states that have adopted comparative fault by statute, a majority of those states did not allow fault to be allocated to an intentional wrongdoer, either by statute or judicial interpretation. Fox, *Can Apples be Compared to Oranges? A Policy Based Approach For Deciding Whether Intentional Torts Should Be Included In Comparative Fault Analysis*, 43 Val.U.L. Rev. 261, 274, and n77 (2008). Some states, including Indiana, allow for the allocation of fault to an intentional tortfeasor. *Id*. at 274-75 and nn78, 79. A few states allow for the allocation of fault to a non-party defendant. Brown and Morgan, *Consideration of Intentional Torts in Fault Allocation: Disarming the Duty to Protect Against Intentional Conduct*, 2 Wyoming L.Rev. 483, 498 and nn80, 82 (2002). Of the states that allow for allocation of fault to a non-party, six states allow for the allocation of fault to a criminal defendant in a duty-to-protect context and hold the negligent party who breached his duty to protect severally liable. *Id*.

Public policy considerations support our decision today to adopt the Restatement (Third) of Torts § 14. "It is a well-established principle that damages are awarded to fairly and adequately compensate an injured party" for his or her loss. *Bader v. Johnson*, 732 N.E.2d 1212, 1220 (Ind. 2000). If the allocation of fault to a criminal defendant reduces the liability of the negligent defendant whose action or inaction allowed the harm to occur, as it did here, the injured party will not be adequately compensated. In addition, the criminal defendant who has been identified and convicted for his intentional act likely will be both judgment proof and without insurance coverage from which the injured person could be compensated. Further, the negligent business owner can insure against liability arising from inadequate security. Combining the allocation of fault of the criminal defendant with the negligent defendant imposes liability where there is insurability. Holding the negligent proprietor liable as provided under § 14 also serves as a deterrent to breaching one's very duty.

"When a trial court considers and grants a motion to correct error, even if done belatedly, we perceive that such a decision will typically be correct on the merits and will result in expeditious further proceedings, without an intervening appeal." *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d at 288. Such was the case here. We agree with the trial court's conclusion that a new trial was warranted on the issue of the allocation of fault because it was against the weight of the evidence. Our adoption of the Restatement (Third) of Torts § 14 will better enable the jury to make its determination in a manner that will carry out the goal of adequately compensating the injured party.

We recognize that our Supreme Court has held that "the Act abrogates the old rule of

joint and several liability in suits to which the Act applies." *Ind. Dept. of Ins. v. Everhart*, 960 N.E.2d 129, 138 (Ind. 2012) (citing *Huber v. Henley*, 656 F. Sup. 508 (S.D. Ind. 1987)); *but see*, *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104 (Ind. 2002) (Dickson, J., dissenting). The joint and several liability component of § 14, however, is different. Multiple defendants are joint tortfeasors if their independent negligent conduct proximately caused an indivisible harm. *Palmer v. Comprehensive Neurologic Servs., P.C.* 864 N.E.2d 1093 (Ind. Ct. App. 2007). At common law, a plaintiff could sue any of the joint tortfeasors to recover the total amount for the entire harm. *Ind. Dept. of Ins. v. Everhart*, 960 N.E.2d 129. In situations contemplated by Restatement (Third) of Torts § 14, we are not presented with defendants charged with separate, independent acts of negligence. Instead, we are presented here with one negligent defendant who breached a duty to prevent the foreseeable intentional conduct of another defendant. In that situation, the joint and several liability rule as a component of the very duty doctrine is appropriate and just.

### 3.

The Estate argues that the trial court erred by allowing the jury to allocate fault to Santelli. The Estate contends that the evidence of how Pryor gained access to Santelli's room was insufficient to support the 1% allocation of fault to him. The Estate asserts that the jury must have resorted to speculation in coming to that determination. We decline to reach this issue, however, as the Estate has succeeded in obtaining a new trial on the issue of the allocation of fault.

### 4.

The Estate has raised the issue of the admissibility of the evidence of a police shootout that had occurred at Rahmatullah's motel six months prior to Santelli's murder and claims that the trial court abused its discretion by excluding the evidence. We address the issue because of the likelihood that it will arise during the new trial on the allocation of fault. Should the Estate seek to admit such evidence of prior criminal activity at Rahmatullah's motel in the new trial, such evidence would be relevant to the issue of the foreseeability of criminal conduct occurring on those premises. *See Schlotman v. Taza Café*, 868 N.E.2d 518 (Ind. Ct. App. 2007) (look to prior similar incidents to determine if criminal act was foreseeable).

Judgment reversed and remanded.

DARDEN, J., and VAIDIK, J., concur.